(No. 36958.—

JOSEPH KUPSIK *et al.*, Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed September 28, 1962.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and JOHN J. O'TOOLE, Assistant Corporation Counsel, of counsel,) for appellant.

Joseph C. Owens, of Chicago, for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The circuit court of Cook County held the zoning ordinance of the city of Chicago invalid as it applied to a lot owned by the plaintiffs, Joseph Kupsik and Stella Kupsik, his wife. The trial judge certified that the public interest required a direct appeal to this court, (Ill. Rev. Stat. 1961, chap. 110, par. 75,) and the city has appealed.

The first issue that confronts us is a procedural one. The city contends that the circuit court was without jurisdiction to hear the case. It bases that contention upon paragraph (e) of section 73—4 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1959, chap. 24, par. 73—4.) Paragraph (d) of that section provides that in municipalities having a population of 500,000 or more, an applicant for a zoning variation must serve notice of his application upon the owners of property located within 250 feet of the property for which the variation is requested. Paragraph (e), upon which the city relies, is as follows:

"(e) In municipalities of 500,000 or more population, when any zoning ordinance, rule or regulation is sought to be declared invalid by means of a declaratory judgment proceeding, not more than 30 days before filing suit for a declaratory judgment the person filing such suit shall serve written notice in the form and manner and to all property owners as is required of applicants for variation in subsection (d) of this section, and shall furnish to the clerk of the court in which the declaratory judgment suit is filed, and at the time of filing such suit, the list of property owners, the written certificate and such other information as is required in subsection (d) of this section to be furnished to the board of appeals by an applicant for variation."

The plaintiffs did not serve the notice specified in

paragraph (e) of section 73—4. Their complaint sought to have the ordinance set aside as a cloud upon their title, and it prayed for injunctive relief against the city and its officials as well as for a declaration of the invalidity of the ordinance. It is the position of the city that when the legislature in 1957 added paragraph (e) to section 73—4, it thereby established the declaratory judgment action as the exclusive remedy by which the validity of the Chicago zoning ordinance may be challenged. They argue that the rquirement of notice to owners of adjoining property is jurisdictional, and that the plaintiffs' attack upon the ordinance as a cloud upon their title, as well as their prayer for injunctive relief, are subterfuges designed to circumvent the notice requirements of paragraph (e) of section 73—4.

The plaintiffs dispute the city's construction of the statute and they contend that if it is so construed it would deprive them of due process of law and would violate other constitutional provisions as well. They assert that neither the classification by population nor the classification by form of action is based upon any relevant factual distinction, and that the section therefore violates the prohibition of section 22 of article IV of the constitution against local or special laws regulating practice or procedure in courts of justice, as well as section 29 of article VI which requires uniform practice and proceedings in courts of justice.

These constitutional objections are indeed formidable, but we find it unnecesary to pass upon them because we have concluded that the section is not applicable to this case. By its terms it refers only to suits for declaratory judgments, and nowhere does it suggest that the traditional forms of relief are abolished.

There are some situations in which declaratory relief is the only relief available,—where damages can not be obtained, for example, because there has been no breach of the contract, or where an injunction can not be issued

because there has been no threat of immediate and irreparable injury. In the early days of the declaratory judgment in this country, some courts held that a declaration of rights could not be had if any of the ordinary forms of relief were available. (See Borchard, Declaratory Judgments, chap. VI.) To avoid such a result, our statute, like the Uniform Declaratory Judgment Act, makes it clear that a declaratory judgment is not precluded by the availability of other relief. (Ill. Rev. Stat. 1961, chap. 110, par. 57.1; Uniform Declaratory Judgments Act, sec. 8; 9A Uniform Laws Ann., p. 204.) The declaratory judgment has thus become an optional alternative remedy.

But because a declaratory judgment is not barred when other relief is obtainable, it does not follow that the right to a declaratory judgment has swallowed up the right to damages, or to an injunction, or to other appropriate relief. Nothing in the section on which the city relies suggests that surprising result. We can not, therefore, accept the city's argument that paragraph (e) of section 73—4 was intended to abolish, in zoning cases relating to property in the city of Chicago, all other methods by which the validity of legislation has traditionally been challenged. Determination of the constitutional issues raised by the plaintiffs must therefore be postponed until such time, if ever, as the present contention is advanced in an action seeking only declaratory relief against the zoning ordinance of the city of Chicago.

The property involved in this controversy is a lot located on the north side of Higgins Avenue, a diagonal street running in a northwesterly-southeasterly direction. The lot has a frontage of 36 feet and a depth of 125 feet. Its front portion is improved with a small one-story concrete block building, 32 feet wide and 25 feet deep, which was built in 1955. This building was used for the sale of ice cream until the fall of 1960, and since then has been vacant. The rear of the lot is improved with a swimming

pool. The plaintiffs' residence adjoins this lot on the north-west, and the swimming pool is used by them and the members of their family.

The block in which the plaintiffs' property is located is zoned "B2-1," a restricted retail district. In such a district a tavern is not a permitted use, and the plaintiffs challenge the validity of the zoning ordinance insofar as it interferes with their use of the concrete block building as a tavern. To sustain their position the plaintiffs offered the testimony of real-estate experts to the effect that the value of the front portion of their lot, excluding the swimming pool, was from $4,500 to $5,000 under the present zoning, and that it would be worth $8,000 to $8,500 if the proposed use was allowed. One of these witnesses testified that under the present zoning the rental value of that property was $85 to $90 per month and under the proposed use it would be $150 to $200 per month.

While taverns are prohibited in a B2-1 district, they are permitted in a B4-1 district. The plaintiffs contend that the existing uses in the vicinity characterize the area as a B4-1 district although the ordinance has not so classified it. The record shows that, with the exception of one small vacant lot, all of the property on both sides of Higgins Avenue in the block in which plaintiffs' lot is located is improved. There is an auto repair shop, a funeral home, a filling station, a plumbers' supply shop, two real-estate offices, a drug store, a chain store grocery and market (also termed a "food mart"), the plaintiffs' residence, one existing apartment building and one under construction. Of this total of eleven uses in the block, the first four are conceded by the city to be uses that are permitted in a B4-1 zone but forbidden in a B2-1 zone. The master in chancery who heard the evidence also placed a fifth use, the food mart, or grocery and market, in that category, but the city disputes that classification. These B4-1 uses are characterized as nonconforming uses, and although the record is not

entirely clear, it appears that all of them were permitted uses prior to the adoption of the city's new ordinance in 1957.

There is one tavern on Higgins Avenue in the block immediately southeast of the plaintiffs' property, and another on the nearest corner of the block immediately to the northwest. In these two adjacent blocks and in the block in which the subject property is located, there is an undisputed total of eight nonconforming uses.

Of course the existence of nonconforming uses does not automatically invalidate a zoning ordinance. (*Jacobson* v. *City of Evanston,* 10 Ill.2d 61.) The impact of those uses upon the area involved is a matter for measurement and appraisal in each case. Their frequency and character may bé such as to make incongruous a zoning classification that fails to take them into account, and where that has been the case, we have refused to uphold the ordinance. (*Merrill* v. *City of Wheaton,* 356 Ill. 457; *Harmon* v. *City of Peoria,* 373 Ill. 594.) Such is the situation shown by the record in this case. We are therefore of the opinion that the circuit court correctly held the ordinance invalid, and its decree is affirmed.

*Decree affirmed.*