Earl W. Gable and Lillian Gable, His Wife, Plaintiffs-Appellees, v. Village of Hinsdale, a Municipal Corporation, Defendant-Appellant.

**Gen. No. 66–156.**

Second District.

September 20, 1967.

Rehearing denied November 14, 1967.

Supplemental opinion November 14, 1967.

Arthur C. Thorpe, of Klein, Thorpe, Kasson and Jenkins, of Chicago, for appellant.

Rathje, Woodward and Dyer Associates, of Wheaton, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court.

In 1948 the plaintiffs acquired two lots in the Village of Hinsdale, in DuPage County, located at the Southwest corner of the intersection of U. S. Route 34, commonly called Ogden Avenue and County Line Road. The property measures 105 feet along Ogden Avenue and 300 feet along County Line Road. At the time of the purchase, the land was zoned for commercial use permitting automobile service stations, among other things. In 1949, the plaintiffs constructed a small building and have used the premises ever since as a drive-in restaurant. In 1957, the Village passed a comprehensive zoning amendment but continued the business zoning on the subject property.

In 1961, Village adopted a new comprehensive zoning amendment which created, for the first time, a classification known as "F" Planned Development District. The purpose of this district as set forth in the ordinance is as follows: "All such planned developments are declared to possess characteristics of such unique and special form with such a large impact on the entire community that such specific development shall be considered individually." The corporate authorities apparently thought that the plaintiffs' property was "unique" and therefore classified it under the "F" District. The only uses which appear to be permitted in the so-called "F" District are governmental buildings, professional offices or retail businesses and garden apartments.

Subsequently, the plaintiffs entered into an option to sell the premises to an oil company for $100,000, contingent upon a rezoning, permitting the erection of an automobile service station. The plaintiffs applied for a rezoning of the north 150 feet of the premises but their request was denied. This suit followed. The trial court

found the ordinance of the Village arbitrary and unreasonable in its application to the subject property and authorized the plaintiffs to construct and maintain the automobile service station in accordance with the exhibits admitted in the trial. The Village did not file a timely appeal but we have granted the Petition for Leave To Appeal so that the case may be considered upon its merits. Our decision to allow this Petition is limited to this case and we will consider such future Petitions in other cases on their individual merits.

The Village brings the case to this court raising five points: (1) That the plaintiffs failed to establish that the present zoning depreciated the subject property; (2) That plaintiffs failed to show any effort to sell the premises; (3) The existence of nonconforming uses in the neighborhood does not justify a setting aside of an existing zoning classification; (4) A zoning ordinance is presumed valid; and (5) The trial court should have considered the zoning plan of the Village for the area.

Before considering the theories of the Village, it is well to have a picture of the area in mind.

Ogden Avenue is a four-lane heavily traveled highway carrying traffic to and from the city of Chicago. A short distance East of the subject property, Ogden Avenue crosses the Tri-State Toll Highway which is part of the Interstate Highway System. At that intersection there exists a four-way interchange permitting traffic to enter and leave in all directions. East of the subject property, on the other side of County Line Road, the land is in the unincorporated area of Cook County and zoned for general business use. That property is improved with a large restaurant known as "The Cypress." North of the subject property, across Ogden Avenue, is another large restaurant called "The Spinning Wheel." Both restaurants have large parking facilities and serve alcoholic beverages. West of the subject property is a pharmaceutical office selling veterinary supplies. The rear of

that property is used for a parking lot. South of the subject property is a two-story residence owned by the owner of the Cypress restaurant and temporarily used to house his employees. Along Ogden Avenue, west of the subject property, is a realty office, an architectural office, a construction firm, a laundromat, an office building and an automobile agency containing a repair shop and used car lot as well as an automobile showroom. The rear of all of these properties are used for the storage and parking of automobiles and trucks. In the next block to the west is located the General Motors Training Center, running some 400 feet along Ogden Avenue and the property immediately next to that contains another automobile dealership.

In July of 1961, the Village granted a variation to General Motors permitting parking on a part of their premises which was zoned for single-family residences. Thereafter, in September, 1965, the Village granted another variation to the General Motors Corporation, reducing the setbacks for the Training Center. Subsequently, the Village granted another variation permitting access to the rear of one of the properties occupied by an automobile agency. All of the experts who testified in the case agreed that the effect of these variations was to downgrade the area and yet, as before noted, all of the variations were granted.

We come now to the defendant's contentions. First, they contend that there is no proof that the present zoning depreciates the property. While there was some conflict between the witnesses on this subject, the plaintiffs' witnesses testified that the property would be worth $100,000 if it could be used for an automobile service station and that it was worth $50,000 as presently zoned. Defendant's witnesses, on the other hand, testified that the property was worth $100,000 as presently zoned.

 We are cognizant of the rule that the trial court had the witnesses before him and was in a better position

to judge their credibility. Therefore his decision should not be disturbed unless manifestly against the weight of the evidence, Bauske v. City of Des Plaines, 13 Ill2d 169, 181, 148 NE2d 584 (1957). However, another rule appears to us to be more pertinent. The true inquiry in this regard is whether or not the depreciation of property is justified by the public welfare. See, Dixon v. County of Kane, 77 Ill App2d 338, 341, 222 NE2d 354 (1966). In this case we can see no basis in the public welfare for sustaining the present zoning. Merely because the corporate authorities stamped the area as "unique" does not make it so. To us it appears that the area was originally contemplated and zoned for business use and that it has developed for those purposes. In establishing a comprehensive amendment to a zoning ordinance the corporate authorities may not close their eyes to existing uses. The fact that this is done in a program to "upgrade the area" adds no vigor to the argument.

██ Having in mind that the use and zoning of surrounding property is one of the chief factors to be considered in a zoning case, Krom v. City of Elmhurst, 8 Ill 2d 104, 107, 133 NE2d 1 (1956), it seems to us that there is no justification for the present zoning. The trial court found that there was a depreciation in value and we are not inclined to disturb its findings. As indicated, the fact of the depreciation is not important, but the fact that that depreciation cannot be justified upon the public health, safety and welfare is a fatal defect.

Defendant's next point is that the plaintiff failed to prove that he had made any effort to sell the subject property as presently zoned. The court does not consider this to be a factor of great importance in a zoning case. The uses permitted in the so-called "F" Planned Development District are so few as to reduce the number of potential buyers to a minimum. Most of the surrounding property is devoted to uses which are not permitted in the "F" District and we could hardly make it a require-

ment that an owner exhaust all possibilities of sale under these circumstances.

The defendant's next argument is that the existing zoning should not be set aside because of nonconforming uses. Nonconforming uses are a fact of life and we must all live with them. Many municipalities restrict their expansion and attempt to gradually eliminate them. However, the zoning ordinance of the Village, in this case, provides "Uses existing at the date of adoption of this Ordinance which constitute exceptions to this section of the 'F' District regulations may be altered or enlarged subject to the other limitations, i. e., parking, loading, setback, intensity, side yard, heights, etc., as set forth herein." So it can be seen that the Village not only acknowledges nonconforming uses but makes no effort at their control or elimination.

■ The existence of nonconforming uses does not automatically invalidate a zoning ordinance. They are land uses which have to be considered in each case in determining whether or not the zoning in question conforms with the use and zoning of surrounding properties, Kupsik v. City of Chicago, 25 Ill2d 595, 600, 185 NE2d 858 (1962). There is some dispute as to how many of the uses in the area are nonconforming, but it appears that by any standard more than half of the frontage is devoted to nonconforming uses.

In addition, the Village has granted variations permitting the extension of nonconforming uses upon property zoned for residential purposes. The record shows no conduct on the part of the Village tending to restrict nonconforming uses. Their ordinance permits extensions and they have granted variations which authorize further extensions. Nonconforming uses exist and they appear to us to characterize the area. The trial judge was not in error in so holding.

■ The defendants next point is that the zoning ordinance is presumed valid. Any official act of the

129

corporate authorities is presumed valid, but this presumption may be rebutted by a showing that the act is not grounded in the public health, safety and welfare.

■■ In the early case of City of Aurora v. Burns, 319 Ill 84, 94, 149 NE 784 (1925), the Supreme Court recognized that the corporate authorities of each municipality had the right to establish reasonable restraints upon the right to use private property. The power to establish restraints carries with it the obligation to ground those restraints in the public health, safety and welfare, Loves Park v. Woodward Governor Co., 14 Ill2d 623, 625, 153 NE2d 560 (1958). As we have previously found, there is no basis in the public health, safety and welfare for the present restraint. As a result, there is no right to establish the restraint.

■■ Finally, the defendant argues that the trial court should have considered the so-called zoning plan for Hinsdale. Obviously, a zoning plan is a factor to be considered, but one cannot consider those things which assist him and close his eyes to those which do not. In establishing a zoning plan the corporate authorities have reasonable powers to affect an upgrading. On the other hand, they cannot ignore existing uses. As previously noted, the corporate authorities in this case not only acknowledged existing uses but provided for their expansion. In particular cases they granted variations which authorize the expansion of nonconforming uses in the residential areas. The mere statement by the corporate authorities that they have a "zoning plan" and that they are attempting to "upgrade" an area does not make that a fact. The conduct of the corporate authorities in this case indicates the contrary. Having in mind all of the factors which apply in a rezoning case we conclude that the trial court was correct.

■ While the relief granted was not questioned by any of the parties, we deem it important to say a word on that subject. The trial court did not rezone the property

130

and it did not authorize any use other than the use proposed by the plaintiff. The court limited its decision and permitted only the construction of an automobile service station based upon a plot plan and front elevation drawings shown in the record. This decision is correct and in line with our recent decision in the case of Fiore v. City of Highland Park, 76 Ill App2d 62, 75–76, 221 NE2d 323 (1966).

Judgment affirmed.

DAVIS, P. J. and ABRAHAMSON, J., concur.

ON PETITION FOR REHEARING

On rehearing it has been pointed out to us that there are numerous permitted uses in the so-called "F" District. Among them some thirty-nine are retail business uses. These permitted uses, however, do not include an automobile service station as proposed by the plaintiff, nor do they include automobile sales or repairs. This fact was not pointed out to us in the briefs but the Village now contends that the existence of these permitted uses make most of the existing uses in the neighborhood conforming. We have carefully reexamined the record and find that the conclusion of the Village is not correct.

The Cypress and Spinning Wheel Restaurants are nonconforming because they both serve alcoholic beverages.

There are six land uses in the same block as the subject property. The first has a pharmaceutical office for veterinary supplies and the rear of the property is used for the storage of automobiles. Neither use conforms with the "F" zone. The second lot is used for the storage of automobiles and does not conform. The front of the third lot is used as an architectural office and does conform. However, the back of that same property contains an automobile paint and body shop which does not conform. The next property is devoted to automobile

131

sales and repairs and does not conform. The fifth lot has a laundromat which is a conforming use, but the rear portion of that lot is used for the storage of automobiles, a nonconforming use. The sixth lot has an office building which apparently conforms, but again the back part of that property is used for the storage of automobiles, which is a nonconforming use. It appears that the rear of all of the properties above described is devoted to the storage of automobiles in connection with a Chevrolet agency on the block. This is not a conforming use of the property. The next block is used by the General Motors Training Center and that is not a conforming use.

Of all the uses described only three are conforming and even in those instances a portion of the property is devoted to a nonconforming use, so that upon reexamination it appears clear to us that the large majority of the land uses in the immediate area are nonconforming.

The only other point made by the Village on rehearing is that the Village did not grant a variation to permit access to the rear of the property occupied by an automobile agency. This appears to be correct. Instead of granting a variation the Village merely granted a permit authorizing access. The court is unable to see any difference as a practical matter because by whatever name, the fact remains that granting a permit was an affirmative act of the Village contrary to its position that the area was "unique."

The new matters brought to our attention in the Petition For Rehearing reinforce our view that the zoning of the subject property is improper and that the relief prayed should be granted. We therefore adhere to our original decision, and hold that the petition for rehearing should be denied.

Petition for rehearing denied.

DAVIS, P. J. and ABRAHAMSON, J., concur.