Allan R. Koretz, Plaintiff-Appellant, v. All American Life and Casualty Company, Defendant-Appellee.

Gen. No. 52,431.

First District.

November 14, 1968.

James R. Mitchell and John W. Damisch, of Chicago (Jurco, Damisch & Sinson, of counsel), for appellant.

Petit, Olin, Fazio and Safeblade, of Chicago (Edward Atlas, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

The defendant is a corporation engaged in the business of issuing general life and casualty insurance policies. In the Fall of 1962, its predecessor company undertook to issue additional shares of corporate stock which were to

be distributed, not to the public generally, but only to those persons whose interests were, in the judgment of the company, conducive to the growth and development of the company. The prospectus issued, at that time, stated the purpose for which the stock was to be issued and provided that the offering was limited to shares subscribed to by April 1, 1963. Pursuant to the prospectus the company solicited subscriptions for 100,000 shares at $4 per share.

In November, 1962, plaintiff was introduced to Richard T. Christoph, a director of the defendant company, by one, Telpner, a mutual friend. Telpner told Christoph that he believed the plaintiff "would be good in the life insurance business" and that plaintiff was interested in subscribing to some of the stock then being offered by the defendant. Christoph told Telpner that it looked like the stock was going to be oversubscribed; that there was no assurance that he could let plaintiff have any of the stock but that he would consider it. Sometime in December, 1962, Telpner went to Christoph's office. Plaintiff testified that he was also present at this meeting; however, Christoph denied that plaintiff was present and testified that only Telpner was present. In either case, during the course of the meeting, Telpner deposited with Christoph plaintiff's check for $4,000, together with a subscription agreement, signed by plaintiff, wherein plaintiff offered to purchase 1,000 shares at $4 per share.

Paragraph one of the agreement provided, in part, that:

> "Upon receipt of this Agreement . . . , the Company will acknowledge said receipt within fifteen (15) days from the date hereof, and issue its Interim Receipt to the subscriber, subject to provisions of paragraph five (5) hereof."

199

Paragraph four, in part, added:

> "Deposit of the funds paid in by the subscriber into the Company's Escrow Account . . . shall constitute acceptance of this agreement by the Company."

and paragraph five partially provided:

> ". . . Company shall have the right, at its discretion, at the home office, until delivery of the interim receipt, to reject any subscriptions by returning to the subscriber the payment tendered with this subscription."

On January 3, 1963, the defendant forwarded an interim receipt which acknowledged receipt of the plaintiff's subscription agreement and check; advised plaintiff that the offering may be kept open to November, 1963, awaiting approval of the Director of Insurance as provided in the agreement and also in the prospectus; and, that "proper certificates of shares will be issued in accordance with your Subscription Agreement at that time."

The company retained plaintiff's check but did not cash it and did not deposit it in the escrow account. In April of 1963, when the stock was in fact oversubscribed, the plaintiff's check was returned to Telpner. The plaintiff was not informed that his check had been returned until October, 1963, when he had a conversation again with Christoph. During his conversation, Christoph testified that he also told the plaintiff that the company would let him subscribe for 100 shares of the stock at the same price of $4, even though the stock was then selling at $13.00 per share "to settle any differences." Plaintiff did subscribe for the 100 shares of stock, paid $400 and wrote a letter to Christoph saying in part, "I am indeed glad that we have been able to get together in view of the preceding circumstances."

The plaintiff brings this action to recover the sum of $10,000, which he claims to be the fair value of the stock

which he never obtained under the subscription agreement. The trial court found that there was no agreement which bound the parties, and that, even if there had been an agreement, the later understanding between plaintiff and Christoph operated as an accord and satisfaction of all claims. Plaintiff appeals to this Court urging that there was a firm agreement accepted by the defendant and that defendant had not proved the affirmative defense of accord and satisfaction.

■ If the trial court was correct in its conclusion that an accord and satisfaction was proved in this case, then it is unnecessary to consider whether or not the plaintiff and defendant entered into a binding agreement for the purchase of stock. Proving a subsequent accord and satisfaction would be a bar to his recovery. Leafgreen v. Telford, 169 Ill App 582, 587–589 (1912).

■ In order to constitute an accord and satisfaction there must exist a bona fide dispute, Fichter v. Milk Wagon Drivers' Union, Local 753, 382 Ill 91, 99, 46 NE 2d 921 (1943), cert den 319 US 758, 87 L Ed 1710, 63 S Ct 1177; the sum in dispute must be unliquidated, A. & H. Lithoprint v. Bernard Dunn Advertising, 82 Ill App 2d 409, 412, 226 NE2d 483 (1967); consideration must be present; however, payment by the debtor of a lesser sum as a compromise of a disputed claim may be deemed proper consideration, Smyth v. Kaspar American State Bank, 9 Ill2d 27, 42, 136 NE2d 796 (1956); A. & H. Lithoprint v. Bernard Dunn Advertising, supra, page 412; a meeting of the minds with intent to compromise is essential but may be gleaned from the words and acts of the parties, Brubaker v. United States, 342 F2d 655, 661 (7th Cir 1965); and, the accord must be executed, In re Estate of Cunningham, 311 Ill 311, 316, 142 NE 740 (1924); Corydon & Ohlrich, Inc. v. Kusper Bros. Co., 345 Ill App 224, 233, 102 NE2d 672 (1951).

The degree of proof necessary to establish an accord and satisfaction at first impression, seems to be in a

state of flux. In the case of Corydon & Ohlrich, Inc., supra, at page 232, it was held that it is upon the one asserting the affirmative defense, accord and satisfaction, to prove the same by a preponderance of the evidence. Appeal in this case was denied by the Supreme Court, see, 411 Ill 629 (March Term, 1952). In the case of Canton Union Coal Co. v. Parlin & Orendorff Co., 117 Ill App 622, 625 (1905), affd 215 Ill 244, 74 NE 143 (1905) the Appellate Court stated that:

> ". . . (T)o establish this defense (accord and satisfaction) the proof must be clear and unequivocal that the *observance of the condition* (a condition attached to an offer) was insisted upon, and must not admit of the inference that the debtor intended that his creditor might keep the money tendered, in case he did not assent to the *condition* upon which it was offered." (Emphasis added.)

This proposition, based upon law from another jurisdiction, was not referred to or expressly adopted by the Supreme Court upon affirmance of the Appellate Court decision.

██ ██ We are of the opinion that the proposition cited is still the law, that is, whenever an offer to settle has a condition attached, the observance of that condition must be proved by clear and unequivocal evidence. However, this does not mean that each and every element necessary to constitute an accord and satisfaction is under the same quantum of proof. An accord and satisfaction is nothing more than a contract and should be construed by the rules of law pertaining to contracts. Brubaker v. United States, supra, 661; 6 Corbin on Contracts (1962), § 1277, p 117.

The plaintiff contends that the defendant failed to prove by competent evidence that there was an oral release and satisfaction of the subscription agreement but,

assuming there was competent evidence, then, the defendant (1) failed to prove an oral release or satisfaction of the defendant's obligation under the agreement by clear and convincing proof and (2) defendant's evidence of oral release and satisfaction was not admissible under the parol evidence rule to alter, amend, vary or change the terms of the written stock subscription.

The plaintiff bases his argument upon the incorrect view that the stock subscription was rescinded. His citations that the burden of proof must be clear and convincing and that parol evidence may not be used to vary the terms of an unambiguous written instrument are all correct, if such was the case before us. However, the law of rescission of written contracts and the proof necessary to sustain a rescission are not in point. We are here dealing with an alleged accord and satisfaction which is in lieu of any rights arising out of the subscription agreement.

The law relative to a rescission of a written contract is not necessarily the same as that applied to an accord and satisfaction. Where a rescission of a contract takes place, the rights of the parties under that contract are vitiated or invalidated, whereas, an accord and satisfaction is the creation of new rights without regard to any former rights that might have accrued. Rescission relates to contractual rights whereas accord and satisfaction can relate to either contractual rights or rights arising out of tortious conduct. While the effect, practically speaking, may be the same, (that is, prevent recovery) still a rescission erases all rights under an agreement while an accord and satisfaction admits, to an extent, that the agreement is valid but, because of the subsequent contract, the original agreement cannot be enforced.

In the present case, the trial judge was of the opinion that an accord and satisfaction was alleged and proved. He, as the trier of fact, had an opportunity to

view the witnesses and attest to their veracity and his decision, unless manifestly against the evidence, should not be disturbed, Gable v. Village of Hinsdale, 87 Ill App 2d 123, 127, 128, 230 NE2d 706 (1967). Where there is sufficient evidence to support his finding we are not disposed to disturb it. Stahelin v. Board of Education, School Dist. No. 4 DuPage County, 87 Ill App2d 28, 43, 230 NE2d 465 (1967). The evidence disclosed that there was a dispute and the defendant, through Christoph, made an offer to sell plaintiff certain stock "to settle any differences." The stock was obtained by the plaintiff at a price that was unusually low considering the market value at the time. Also to be considered is plaintiff's statement in his letter of transmittal of his money for the payment of the stock: "I am indeed glad that we have been able to get together in view of the preceding circumstances."

 We feel that all of the elements necessary to establish an accord and satisfaction were present in this case and that the trial court ruled correctly. Having reached this conclusion, there is no need to decide the questions raised on appeal concerning the rights, if any, which the plaintiff had under the stock subscription agreement.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.