George TABAC, Plaintiff,

v.

John KINNEY;  Air Distribution Associates, Inc.; and Air Distribution Associates, Inc. Profit Sharing Plan;  Defendants.

No. 86 C 1997.

United States District Court,
N.D. Illinois, E.D.

Oct. 27, 1987.

Ronald P. Kane, John F. Stimson, Siegan, Barbakoff, Gomberg & Gordon, Ltd., Chicago, Ill., for plaintiff.

Michael A. Pollard, J. Kent Mathewson, Baker & McKenzie, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case arises under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. The jurisdiction of this court is based on ERISA, § 502(e)(1). Plaintiff George Tabac and defendants John Kinney, Air Distributors Associates, Inc., and Air Distributors Associates, Inc. Profit Sharing Plan ("the Plan"), have filed cross motions for summary judgment. For the reasons set forth below, plaintiff's motion is granted and defendants' motion is denied.

## FACTS

The material facts in this case are not in dispute. In July, 1985, plaintiff voluntarily terminated employment with defendant Air Distributors Associates, Inc. after a number of years of employment there. At the time he left, plaintiff had a balance in the Plan of $182,268.67. This amount had last been calculated on November 30, 1984, as provided by §§ 5.02 and 5.03 of the Plan.

Although plaintiff did not request in writing a lump sum distribution of his benefits, on November 2, 1985, plaintiff received a check, dated October 17, 1985, for $182,268.67. Plaintiff cashed the check on December 3, 1985. He then requested from defendant Kinney, the Plan's trustee, his pro rata share of the Plan's earnings for the Plan year ending November 30, 1985. His request was denied.

## STANDARD OF REVIEW

The parties have engaged in substantial debate over the appropriate standard of review of defendant Kinney's decision. Defendants argue the "arbitrary and capricious" standard applies because the claim is essentially one for erroneous application of the Plan's provisions. *Wolfe v. J.C. Penney Co., Inc.,* 710 F.2d 388, 394 (7th Cir.1983). *See also Dennard v. Richards Group, Inc.,* 681 F.2d 306 (5th Cir.1982). Plaintiff insists that a stricter standard should obtain because the trustee was acting for the benefit of his family members, whose interests represented greater than 73% of the Plan. *See Leigh v. Engle,* 727 F.2d 113, 132–33 (7th Cir.1984). *See also Struble v. New Jersey Brewery Employees' Welfare Trust Fund,* 732 F.2d 325, 333–34 (3d Cir.1984). This issue, however, need not be resolved here. For under either standard, this court would render judgment for plaintiff.

## DISCUSSION

■ There is no question that the November 2, 1985 lump sum payment to plaintiff violated the terms of the Plan. Sections 6.02(b) and (e) expressly require a participant's written consent before the Plan may "cash-out" a participant with greater than $1,750 of employer contributions remaining in the Plan. Plaintiff's balance at the time he voluntarily terminated his employment far exceeded this amount. Thus, assuming arguendo that the "arbitrary and capricious" standard applies to Kinney's decision to "cash-out" plaintiff without the latter's written consent, Kinney's actions were arbitrary and capricious in this case. *See Donovan v. Carlough,* 576 F.Supp. 245, 249 (D.C.D.C.), *affirmed,* 753 F.2d 166 (D.C.Cir.1985) (employing multifactor test to determine whether trustee's erroneous interpretation of the plan was arbitrary and capricious).

■ Defendants' argument that, although plaintiff's funds were improperly distributed, plaintiff lost nothing because §§ 6.02(b) and 5.02 of the Plan preclude any addition to his accounts after November 30, 1984, borders on the frivolous. These sections expressly address employer contributions only. Plaintiff concedes that he has no right to employer contributions for the 1985 fiscal year. However, he correctly contends that, pursuant to §§ 6.02(f) and 5.03, he is entitled to his share of the Plan's *earnings* as valued on November 30,

1985.[1] To rule otherwise, as plaintiff points out, would allow defendants to retain the funds of terminated employees without allocating any earnings to their benefit.[2] Again, even the "arbitrary and capricious" standard cannot countenance this result. *Compare Teskey v. M.P. Metal Products, Inc.,* 795 F.2d 30, 33 (7th Cir.1986).

■ Defendants' argument that, by cashing the check, plaintiff waived his right to bring this action similarly lacks any basis in law or fact. All parties agree that plaintiff was entitled to the $182,-268.67 amount of the check. The check did not purport to constitute full payment for amounts due plaintiff under the Plan, nor did plaintiff ever indicate that he viewed it as such. Plaintiff thus had the right to cash the check and then pursue administrative and judicial remedies for disputed amounts.[3] *Farmers and Mechanics Life Association v. Caine,* 224 Ill. 599, 606–07, 79 N.E. 956 (1906); *Koretz v. All American Life & Casualty Co.,* 102 Ill.App.2d 197, 201, 243 N.E.2d 586, 588 (1st Dist. 1968). *See also Germann v. Pekow,* 531 F.Supp. 357, 358 (N.D.Ill.1982) (Shadur, J.).

■ Of course, cashing the check did have one effect. By signing and depositing the check, plaintiff provided the written consent necessary for defendants to terminate his participation in the Plan through a lump sum payment. Thus, on December 3, 1985, plaintiff's participation in the Plan came to an end. Plaintiff is not entitled to any share of Plan earnings subsequent to November 30, 1985.

■ Because plaintiff has not set forth any facts suggesting that Kinney acted in "bad faith" in applying his erroneous inter-

pretation of the Plan to plaintiff's account, this court will not inquire further into the propriety of awarding punitive damages in this case. However, the conclusion that defendants did not act in bad faith in interpreting the Plan in the first instance does not similarly apply to the positions taken by defendants and their counsel in defending against this lawsuit.

Sections 6.02(e) and (f) of the Plan unambiguously state that defendants could not distribute plaintiff's share to him without his written consent, and that any undistributed benefits which defendant Kinney did not transfer to "a bank savings or savings and loan account ... [were to be] maintained to the credit of [plaintiff] and ... adjusted as of [November 30, 1985] ... pursuant to Section 5.03." In their briefs, defendants not only misstated the effects of these provisions, but also misrepresented that §§ 6.02(b) and 5.02 governed the calculation of participants' shares of Plan earnings. *See* Defendants' Memorandum in Support of Motion for Summary Judgment at 4–5; Defendant's Memorandum in Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment at 2.

Defendants' attempts to obfuscate the issues and avoid the clear implications of the Plan's provisions lacked substantial basis in law or fact. Accordingly, this court will award plaintiff his attorneys fees pursuant to ERISA, § 5.02(g)(1), 29 U.S.C. § 1132(g)(1).

## CONCLUSION

Plaintiff's motion for summary judgment is granted. Defendants' motion for summary judgment is denied. "Defendants will

---

1. Section 6.02(f) of the Plan provides, in pertinent part:

In the event the Trustee elects not to transfer the undistributed value of the Vested Percentage of a terminated Participant's Employer Contribution Accounts to a bank savings or savings and loan account pursuant to this subsection, the amount of the undistributed Vested Percentage shall be maintained to the credit of such terminated Participant and shall be adjusted as of the Accounting Date for each Plan Year thereafter pursuant to Section 5.03, but shall not be adjusted pursuant to Section 5.02.

2. Pursuant to § 6.02(f), the Plan may decline a participant's written request for a lump-sum distribution of his funds until the participant reaches 65 years of age.

3. Although this court need not employ Illinois accord and satisfaction law to this federal question case, it may do so where, as here, the federal law "does not call for any special variant of the common law rules." *Germann v. Pekow,* 531 F.Supp. 357, 358 n. 2 (N.D.Ill.1982) (Shadur, J.).

provide plaintiff with an accounting of Plan earnings for the Plan year which terminated November 30, 1985, and will pay plaintiff his pro rata share of these earnings. Defendant will also pay plaintiff his costs and reasonable attorneys fees for this action.

