LILAS DARNELL ROZNER, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (5th Division)   No. 1—87—0701

Opinion filed May 12, 1989.

Keith L. Young, of Lambruschi, Young & Associates, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Joyce A. Hughes and Scott Neville, Jr., both of Chicago Transit Authority, of Chicago, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiff, Lilas Rozner, brought this action against defendant, the Chicago Transit Authority (the CTA), to recover damages for personal injuries she sustained when a CTA bus driver allegedly negligently operated a CTA bus on which plaintiff was a passenger and crashed into a lightpost. A jury returned a verdict against the CTA and for the plaintiff in the amount of $26,077. The trial judge denied plaintiff's post-trial motion for a new trial on the ground that the amount of the damages awarded by the jury's verdict was manifestly and grossly inadequate and plaintiff appeals. For the following reasons we affirm.

Plaintiff testified that it was snowing on the evening of January 30, 1980, but that she had no difficulty walking on the sidewalk prior to boarding the CTA bus at Foster Avenue in Chicago. Plaintiff sat on the driver's side, across from the rear door of the bus.

After a distance, the CTA bus crossed over the center line of Foster Avenue and struck a lightpost. Plaintiff's head bumped the metal frame of a window, her neck snapped, plaintiff fell from her seat and landed unconscious on the rear steps of the bus. Plaintiff was in shock and was unaware of how long she remained on the steps. Someone picked her up and put her back on the seat. Plaintiff testified that she felt pain from her neck down to her right knee.

Plaintiff testified that she went to a hospital the next day because her neck hurt, she could not move her right arm and was in pain from the underside of her right arm down to her right knee. She described these symptoms to the hospital personnel. Plaintiff was X-rayed, and a doctor gave her a neck collar, put her right arm in a sling, prescribed Tylenol No. Three and referred plaintiff to Dr. Milton Wohl.

Dr. Wohl testified that plaintiff related to him that she was in severe pain. Dr. Wohl examined plaintiff and referred her to Dr. Chung. Nine months later, in October 1980, Dr. Chung operated on plaintiff's

neck and also removed three inches of bone from plaintiff's hip. Plaintiff returned after she had been discharged from the hospital because she had difficulty moving. Dr. Chung gave plaintiff a traction device which she was to use for 20 minutes, two or three times daily.

Plaintiff testified that she still had pain when she moved her neck, that medication relieved the pain to a degree, but that the pain always returned. Plaintiff also testified that the surgical scar on her neck was tight and made swallowing difficult. Plaintiff added that she was no longer able to cook, shop or keep house and that her husband now has to perform these chores.

Laverne Shaw, a fellow passenger on the bus with plaintiff, testified that the snow had been plowed completely from the streets at the time of the accident. Shaw stated that the bus traveled at a speed faster than the speed of the buses she usually rode on Foster Avenue and faster than the rest of the traffic that evening. The bus moved into the westbound lane, passed an eastbound car, moved to the right and swerved. The back end of the bus swerved and hit something. Shaw did not feel or hear the application of the bus' brakes or feel the bus slow down before it struck the object. Shaw felt a heavy impact and saw a lightpost lying on the sidewalk. Shaw further testified that she saw the plaintiff on the floor of the bus and a boy helped plaintiff back to her seat. The front of the bus was in the street and the rear of the bus was on the sidewalk.

Constantino Estrada, the CTA bus driver involved in the collision, testified that as the bus traveled eastward approaching Damen Avenue, Estrada saw a prospective passenger standing at the bus stop at Foster and Damen Avenues. Estrada approached the intersection at about five miles per hour, according to his estimation, and applied his brakes "smoothly" two or three times. The rear of the bus skidded to the right as if it were sliding on ice. Estrada lost control and the bus struck a lightpost. Estrada testified that he did not see ice on the street before the bus skidded or after the accident. After the bus hit the lightpost, it skidded two or three more feet. In a report Estrada submitted to his CTA supervisor, Estrada promised to operate his bus better in the future.

Three physicians testified at trial, Dr. Milton Wohl, a board-certified orthopedic surgeon, and Dr. Byong Uk Chung, a neurosurgeon, both on plaintiff's behalf, and Dr. Richard Gilene, also a board-certified orthopedic surgeon, on behalf of defendant.

Dr. Wohl testified that he examined plaintiff for the first time on June 6, 1980, which was about five months after the accident. Dr. Wohl took a medical history of plaintiff and upon examining her found

that her neck was stiff and moved only a few degrees. Plaintiff's right knee grated when flexed and straightened. There was also a mild limitation of the motion of plaintiff's right shoulder, which Dr. Wohl felt was a result of the pain in plaintiff's neck. Plaintiff was also suffering muscle spasms and Dr. Wohl ordered X rays. The X rays, taken on June 7, 1980, showed degenerative arthritis between bones in plaintiff's neck and arthritic spurs, called spondylosis, a result of aging and wear and tear found in persons of plaintiff's age.

Dr. Wohl recommended that plaintiff receive physical therapy and continue to use the neck collar. Dr. Wohl's initial diagnosis was that plaintiff suffered from degeneration of two disks and arthritis in the neck. Dr. Wohl further testified that the trauma of the bus accident was the direct cause of plaintiff's pain and disability.

Dr. Chung testified that he compared plaintiff's X rays taken in January 1980 to those taken in June 1980, and found that, "as far as the demonstration of spurs are concerned, they are exactly the same, and you don't see much change in them." However, Dr. Chung stated, the "unequivocal or unquestionable sign of disk degeneration" was not present on the January X rays but was present on the June X rays, and that even though the change was mostly likely attributable to the injury plaintiff suffered in the collision, the change in and the condition of plaintiff's disks could have occurred without any trauma, if plaintiff were predisposed to degenerative arthritic conditions. In Dr. Chung's opinion, the disk degeneration at the cervical six level was most likely related to the injury plaintiff sustained in the bus collision. Dr. Chung performed a myelogram, which showed damage caused by the spondylosis.

Since plaintiff had not responded to the neck collar or medication, on November 5, 1980, Dr. Chung performed spinal fusion surgery on plaintiff. Dr. Chung testified that the injury plaintiff suffered in the collision caused plaintiff to require the surgery because it aggravated plaintiff's preexisting spondylosis.

Plaintiff next saw Dr. Chung on January 29, 1981, at which time she complained of occasional pain in the back of the neck. Dr. Chung saw plaintiff on April 23, 1981, at which time plaintiff complained of neck pain, limited motion in her neck and pain in her right shoulder. Over the course of the following 4½ years, Dr. Chung saw plaintiff 10 or more times for pain in the neck and shoulder. Dr. Chung prescribed home cervical traction and an anti-inflammatory pain medication.

Dr. Chung opined that plaintiff's pain would probably not require further surgery. Additionally, Dr. Chung stated that he found no atrophy or weakness in plaintiff's arm muscles. Dr. Chung found no

numbness, tingling or sensory loss in plaintiff when he examined her on February 28, 1985. In a deposition given on October 26, 1981, Dr. Chung testified that plaintiff was not disabled.

Finally, Dr. Chung testified that plaintiff suffered no functional loss as the limitation on the movement of plaintiff's neck resulting from the surgery would not interfere with her normal activities.

Dr. Gilene testified on behalf of the defendant CTA that he examined plaintiff two weeks before trial in preparation for testifying on behalf of the defense and found that plaintiff had "pretty good movement" of the neck, no muscle spasms and equal reflexes in plaintiff's upper extremities. There was no difference in plaintiff's two previous X rays. Dr. Gilene stated that he had never recommended surgery where the only symptoms were spondylosis and continued pain. Plaintiff's medical chart did not indicate to Dr. Gilene the necessity of surgery. Dr. Gilene found no signs of wincing or movement when he touched plaintiff, and only minimal loss of motion, which was compatible with the surgery performed.

■■ On appeal, plaintiff contends that the jury's meager award of $26,077 in damages for her pain, suffering and disability must be vacated because it was manifestly inadequate. Defendant CTA contends that because plaintiff failed to raise this issue in her written post-trial motion, plaintiff waived this issue for purposes of appeal. Ordinarily, a party who files a motion for a new trial in writing is limited on review to the grounds or reasons set forth therein and is deemed to have waived all other grounds or reasons for a new trial not therein included. (*Zukowsky v. Grounds* (1980), 85 Ill. App. 3d 355, 406 N.E.2d 848.) Moreover, a post-trial motion must be in writing. (*Neiman v. City of Chicago* (1962), 37 Ill. App. 2d 309, 185 N.E.2d 858.) Plaintiff orally argued at length in the trial court as ground for a new trial that the jury awarded an inadequate amount of damages, but did not include this argument in her written motion for a new trial. Because plaintiff orally argued as a ground in her motion for a new trial that the jury's damages award was inadequate, the trial court and defendant were thus put on sufficient notice that plaintiff was relying thereon for a new trial. Thus, plaintiff's failure to set forth in writing said ground should not be considered a waiver, and we therefore do not consider the issue waived.

■■ We do not agree, however, that the jury's award of $26,077 damages for plaintiff's pain, suffering and disability is manifestly inadequate. Determining the amount of damages is preeminently the function of the trier of fact, and once that amount is determined it should not be disturbed on appeal, unless it is obviously the result of

passion and prejudice. (*Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 494 N.E.2d 795.) In the instant case, plaintiff's complaints of pain were subjective, and as such, the jury, in weighing the credibility of the witnesses, was not required to accept plaintiff's testimony regarding the extent of her pain and suffering. Moreover, the jury could have accepted the testimony of Dr. Chung that plaintiff was not disabled, that plaintiff did not have any functional loss as a result of the bus collision, and that the limitation of the motion of plaintiff's neck would not interfere with her quotidian activities. Further, the jury could have accepted the testimony of Dr. Gilene that he found no muscle spasms in plaintiff's neck. We therefore conclude that inasmuch as the trial judge saw and heard the evidence presented to the jury at trial and approved the verdict of the jury as rendered, we will not disturb the verdict of the jury in the absence of a showing that the verdict was the result of passion or prejudice. *Kupcikevicius v. Fitzgibbons* (1976), 41 Ill. App. 3d 405, 413, 354 N.E.2d 434, 440-41.

Plaintiff next contends that the court and defense counsel violated a pretrial *in limine* order of the court, which alleged violations adversely affected the jury's award of damages and that a new trial on the issue of damages is therefore required. We disagree.

■ An *in limine* motion of the type submitted by counsel in the instant case

"permits a party to obtain an order before trial excluding inadmissible evidence and prohibiting interrogation concerning such evidence without the necessity of having the questions asked and objections thereto made in front of the jury. Thus, the moving party will be protected from whatever prejudicial impact the mere asking of the questions and the making of the objections may have upon a jury." *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 549.

During the hearing on the *in limine* motion, plaintiff conceded that there was no connection between her August 26, 1986, surgery on her lower back and the injury she received in the bus collision on January 30, 1980. Both counsel agreed that there would be no reference before the jury to plaintiff's lumbar region. Plaintiff's counsel also requested that there be no reference to plaintiff's loss of her right index finger in an industrial accident in 1974. Counsel for the defense expressed misgivings about this request because, he stated, plaintiff could then claim that she was unable to use her whole right arm. The trial court ordered that he would bar any evidence regarding plaintiff's right index finger "at the time."

An examination of the order *in limine* issued by the trial judge in the instant case is necessary. Plaintiff's finger was severed in an industrial accident. The order *in limine* stated that the court would "bar any evidence on [plaintiff's] right index finger at this time." Additionally, there would be no evidence, arguments or comments regarding a worker's compensation award of $262 per month for life which plaintiff received for the loss of her index finger; regarding plaintiff's social security disability payments; or regarding back surgery which plaintiff underwent in August 1986, subsequent and unrelated to the bus collision.

Our review of the record establishes that the court's *in limine* order with regard to the foregoing restrictions was followed. No evidence was presented to the jury concerning the injury to plaintiff's right index finger or plaintiff's right hand, or that plaintiff was currently receiving social security disability payments, or that plaintiff had undergone surgery on her lower back in August 1986, subsequent to the bus collision.

During direct examination of plaintiff, defense counsel objected, out of the jury's hearing, that plaintiff volunteered that she could no longer perform household duties, while at the same time the defense was barred by the order *in limine* from showing that plaintiff had undergone back surgery, which surgery defense counsel stated probably rendered plaintiff unable to perform household duties.

*In camera*, defense counsel referred to the order *in limine*, acknowledged that the order *in limine* barred counsel from referring to plaintiff's back surgery and pointed out the potential problem which could arise if plaintiff were permitted to testify that she was no longer able to perform certain functions. Defense counsel contended that the jury could erroneously conclude that plaintiff's inability to perform household duties resulted from the bus collision because "she is limping all over the place." Defense counsel moved to rescind the order *in limine*. Plaintiff's counsel stated that he had instructed plaintiff not to mention her back and that he believed plaintiff understood. The court sustained defense counsel's objection to examination of plaintiff regarding her present ability to perform. However, the court did not rule on defense counsel's motion to rescind the order *in limine*.

Plaintiff's counsel then asked plaintiff to describe how her hip felt and plaintiff testified that she was bothered by it. Plaintiff's counsel asked plaintiff whether there were any functions of plaintiff's neck and shoulders that she was presently unable to perform, but which plaintiff could perform prior to the accident. Plaintiff testified that

she could not do housework anymore.

Thereafter, plaintiff was recalled by the defense following Dr. Chung's testimony. Defense counsel explained that because of plaintiff's obvious limp when taking the witness stand and her testimony that she could no longer perform her housework, he was requesting that the court permit him to further question plaintiff in order to demonstrate to the jury that plaintiff's limp was not due to the injuries she sustained in the accident.

A hearing was held *in camera*, and plaintiff stated that she had been limping since August 26, 1986, that she "walked fine" before that surgery, but that she still believed that her back problems were related in some way to the accident. Thereupon, the trial judge stated that plaintiff's obvious difficulty with walking was highly inflammatory to the jury and concluded that it was necessary to inform the jury that plaintiff's limp was not caused by the accident. Plaintiff's counsel declined to agree to a stipulation proposed by the trial judge that plaintiff's limp was unrelated to the bus collision, but rather was the result of back surgery in August 1986, after the bus collision. The trial judge informed counsel that he, the judge, would question plaintiff before the jury about when she began to limp and whether she had walked with a limp prior to August 1986. Plaintiff's counsel did not object to this ruling. The following colloquy ensued, *in camera*, between counsel and the trial judge:

"[PLAINTIFF'S COUNSEL]: If I might, Your Honor, please, to object to the inquiry *** maybe we could limit the inquiry to a year because if we go to a specific month or date, that implies either surgery, some medical treatment or other accident. There is a big implication.

THE COURT: That doesn't bother me. Does it bother you?

[DEFENSE COUNSEL]: Says she has been limping since August. Doesn't preclude the jury from thinking it was the accident in 1986. That's the problem.

[PLAINTIFF'S COUNSEL]: Limited to the year.

THE COURT: Limited to the year?

[DEFENSE COUNSEL]: They may conclude ***.

THE COURT: I am not going any further.

* * *

[DEFENSE COUNSEL]: Judge, I think there is going to have to be some way not connected to the accident. I don't think that does it.

THE COURT: That does it.

[DEFENSE COUNSEL]: I don't think it does.

THE COURT: You can talk about it in your final argument. He [plaintiff's counsel] is not claiming that there is any \*\*\* he has to claim it first.

[DEFENSE COUNSEL]: Can I make certain I can say that limp has nothing to do with the accident?

THE COURT: Yes.

\* \* \*

[PLAINTIFF'S COUNSEL]: Can we limit it to '86?

THE COURT: Absolutely.

\* \* \*

[DEFENSE COUNSEL]: She can say August.

THE COURT: I don't want her to say. That's enough. Did you ever walk with a limp prior to this year?"

Thus, the trial judge amended the *in limine* order and clearly advised counsel thereof. Plaintiff's counsel, however, failed to object to this amendment of the original order *in limine*, *in camera*, by the terms of which the trial judge decided to question plaintiff about when her limp first occurred. Thereafter, in the presence of the jury, the trial judge asked plaintiff when she began to limp. Plaintiff's counsel did not object to this examination of plaintiff by the trial judge. Plaintiff responded that she began to limp in 1986, after the bus collision of January 1980, and that she did not limp prior to 1986.

■ In closing arguments to the jury, counsel for the defense stated that plaintiff's limp was unrelated to the injury plaintiff sustained in the bus collision. However, plaintiff's counsel orally objected to this closing argument, although as demonstrated by our foregoing examination of the *in camera* hearing and the trial court's amendment of the order *in limine*, the trial court ordered, without objection on the part of plaintiff's counsel, that it was permissible for defense counsel to make this closing argument to the jury. Inasmuch as plaintiff's counsel objected only to this closing argument of the defense, which was in accord with the amended order *in limine* and the evidence, the argument was appropriate. We conclude that neither the trial court nor defense counsel committed any error or violation with respect to the order *in limine* or its amendments.

The judgment of the trial court is affirmed.

Affirmed.

LORENZ and COCCIA, JJ., concur.