Luella M. Gumbiner, a/k/a Luella Minkus, Plaintiff-Appellee, v. The Village of Homewood, Defendant-Appellant.

(No. 53177;

First District—November 23, 1970.

Walter D. Cummings, of Homewood, for appellant.

Arvey, Hodes & Mantynland, J. Herzl Segal and Walter V. Sesakall, all of Chicago, for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, Village of Homewood, appeals from a declaratory judgment order finding the R-3 general residence classification of the subject property invalid and permitting Lot 2 of plaintiff's property to be developed as an integral part of the entire tract owned by plaintiff.

Plaintiff owns 357 feet east of South Western Avenue on 183rd Street and 429 feet along South Western Avenue, south of 183rd Street. This parcel is sub-divided into three lots. Lot 2 located in part of the south-

west corner thereof has a frontage of 200 feet on Western Avenue and runs east 200 feet thus constituting a 200 foot square. It is vacant and un-improved and is presently zoned R-3 by the 1960 zoning order of the Village of Homewood. The rest of plaintiff's property, being part of Lot 3 and all of Lot 1 are zoned B-3, service business district, and is improved with various types of uses and structures. A gasoline filling station is located on part of Lot 3 at the south-east corner of Western and 183rd. Lot 1 is improved and has thereon a real estate office building, a store occupied by a lighting fixture business, an A. & P. food store with a parking lot and loading zones.

On or about April 14, 1965, plaintiff presented a petition before Homewood's Plan Commission to re-zone Lot 2 from R-3 to a B-3 district. Said Commission recommended to the Zoning Board of Appeals that said re-zoning be approved. On or about May 19, 1965, the Zoning Board of Appeals denied the request. Subsequently, President and Trustees of Homewood concurred in the report of the Board of Appeals and denied plaintiff's petition for re-zoning.

Plaintiff then filed a complaint for declaratory udgment to hold the 1960 Zoning Ordinance as amended insofar as it classified the subject property (Lot 2) as a R-3 General Residence District, invalid and void. The trial court found said ordinance "harsh, arbitrary, discriminatory, unreasonable and unrelated to the public health, safety, comfort, morals and welfare." The trial court further granted to plaintiff the right to use said property as proposed by plaintiff to erect a building upon a portion of subject property (Lot 2) which is to be occupied by offices and retail stores with provisions for off-street parking and loading facilities upon the remainder of the subject property, excluding certain special uses set forth in Section VIII, B-1, B-2 and B-3 business districts of defendant's zoning ordinance.

■■ Hereafter we shall refer to the Village of Homewood as the Village. On appeal the Village contends that the zoning ordinance is presumed to be valid unless overcome by clear and affirmative evidence that it is arbitrary or unreasonable. The burden is on the party claiming such arbitrariness and lack of reason. The plaintiff's entire property was owned by the plaintiff who inherited it prior to the enactment of "The Homewood Zoning Ordinance." Commercial type uses of plaintiff's property have been established for some years prior to 1960. Lot 2 was not zoned in conformity with surrounding and existing uses. Commercial type uses upon and surrounding plaintiff's property have been established since 1910. The single family houses to the west and south of the subject property were built after the commercial character of plaintiff's land was established.

South Western Avenue adjacent to plaintiff's property is a heavily traveled thoroughfare; West 183rd Street is a main artery serving eastbound and west bound traffic through the Village. It serves as a connecting link to arterial highways going north and south. Approixmately 500 feet east of the east line of plaintiff's property are the Illinois Central Railroad tracks. Located between these tracks and plaintiff's property fronting on West 183rd Street is the yard of the Homewood Fuel Material Company. South of this material yard is the Parsons Ammonia Company. South of and abutting plaintiff's property on the south between South Western Avenue and the Parsons Ammonia Company is a textile mill. All of the property owned by plaintiff abutting Lot 2 is zoned and used for uses permitted in a B-3 district and to the east and south of Lot 1 and Lot 2 the property is zoned and used by uses permitted in a manufacturing district.

The south side of West 183rd Street extending from South Western Avenue on east to Dundee Street on the west is improved with buildings devoted to business uses zoned as a B-3 Service Business District. South Western Avenue dead ends at West 183rd Street. The property fronting along the north side of West 183rd Street (opopsite the B-3 district on the south side of West 183rd Street) is zoned as an R-3 General Residence District. The west end of this area, being the northwest corner of West 183rd Street and South Western Avenue, if extended, is improved with an apartment building. Easterly thereof along the north side of West 183rd Street the property is unimproved and zoned R-3 General Residence District.

The west side of South Western Avenue south of the east and west alley immediately south of West 183rd Street opposite plaintiff's property is developed with single family homes zoned as an R-2 Single Family Residence District. These homes were built after most of the business uses and all of the manufacturing uses described above were established.

Since plaintiff's property outside Lot 2 contains a supermart (the A. & P. store), it appears that successful and accepted business practice favors the establishment of an allied and auxiliary business such as a drug store and other service facilities to coordinate the development and to get the maximum utility out of the property and service to the municipality. Lot 2 is part and parcel of the total holding and should be used in conjunction with it. No adverse effect upon surrounding properties can result. Objectionable uses have no application here since these and others were excluded as a proposed use of Lot 2 by the decree of the trial court having been disclaimed as a proposed use by the plaintiff or objected to by the defendant. The uses that were excluded are specified in the judgment order. They are principally uses that, in the opinion of the trial court,

based on the evidence, might contribute noise, odor or be obnoxious or incompatible with the surrounding area.

We do not agree with defendant's contention that Lot 2 is a "buffer" between the business use of the remainder of plaintiff's property and the single family residence zoning to the south. The single family houses do not face plaintiff's property. They face another street, Clyde Terrace, south of plaintiff's property. The single family area to the south is actually buffered by its own use. It is unrealistic to establish a dividing line with plaintiff's tract of land which is a neighborhood shopping center and zoned on one side of the line as R-3 and the other side of the line as B-3 in the absence of a street or alley which would form a natural boundary between the different parts.

■■ It is well established that the validity of each zoning ordinance must be determined on its own facts and circumstances. The courts have established certain facts which must be considered in determining the validity of a zoning ordinance. In *La Salle National Bank v. County of Cook* (1957), 12 Ill.2d 40, 145 N.E.2d 65, the Illinois Supreme Court held at page 47:

> "No one factor is controlling. It is not the mere loss in value alone that is significant, but the fact that the public welfare does not require the restriction and resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance fails and the presumption of validity is dissipated. (*Krom v. City of Elmhurst*, 8 Ill.2d 104.) The law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare."

The evidence presented convinced the trial court that the zoning ordinance bore no substantial relationship to the public health, safety, comfort, morals or welfare. In *La Salle National Bank v. Cook Co.* (1963), 28 Ill.2d 497, 501, 192 N.E.2d 909, the court said:

> "Zoning classifications must bear real and substantial relationship to the public welfare, health or safety; and where the gain to the public is small, as compared to the hardship imposed on the owner, no valid basis for exercise of the police power exists."

■■ The defendant maintains that zoning classification is a legislative function and that there is presumption of validity in favor of the ordinance. However, these presumptions have been overcome by the plaintiff's sustained showing that the ordinance is arbitrary, unreasonable and bears no substantial relationship to public welfare. *Wolfe v. Village of Riverside* (1965), 60 Ill.App.2d 164, 208 N.E.2d 833.

■■ Defendant also contends that the trial court re-zoned the property

here involved and thus has substituted its judgment for that of the Village. We do not agree with this contention. The trial court's order did not re-zone the property and did not authorize any use other than that proposed by the plaintiff. In *Sinclair Pipe Lines v. Richton Park*, 19 Ill.2d 370, at page 379, the court said:

"In our opinion, it is appropriate for the court to avoid these difficulties by framing its decree with reference to the record before it, and particularly with reference to the evidence offered at the trial. In most of the cases that have come before us in recent years, a specific use was contemplated and the record was shaped in terms of that use. In such cases the relief awarded may guarantee that the owner will be allowed to proceed with that use without further litigation and that he will not proceed with a different use. If the land owner asserts a broader challenge in terms of a class of uses, the decree may be shaped accordingly. Such decrees will not, of course, solve all potential problems for all time, but neither will a decree the effect of which is to leave the property completely unzoned. In either case further action by the appropriate legislative body is indicated.

It is objected that by this procedure the court goes beyond the realm of adjudication and itself becomes a zoning agency. But if the validity of a zoning ordinance is challenged by mandamus to compel the issuance of a building permit, a successful plaintiff is entitled to a judgment directing the issuance of a building permit in accordance with the plans and specifications he submitted. When a plaintiff seeks under the Administrative Review Act to reverse an administrative determination denying his application for a variation, the appropriate relief is an order directing that a specific variation be allowed. The end result of the procedure which we adopt for declaratory judgment and injunction cases does not differ from that in litigation involving mandamus and administrative review."

The judgment order in this case is based on the evidence and permits a fair and reasonable business use of plaintiff's property for retail stores and offices. Uses deemed obnoxious to the defendant and disclaimed by the plaintiff were specifically excluded. As the court said in *Gable v. Village of Hinsdale*, 87 Ill.App.2d 123, 130, 230 N.E.2d 706 (1967):

"The trial court did not rezone the property and it did not authorize any use other than the use proposed by the plaintiff."

The judgment order of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

MURPHY and McNAMARA, JJ., concur.