OPINION.
Rhoda Nathan was murdered while staying at the Embassy Suites Hotel in Blue Ash, Ohio. Appellant Elwood Jones, a hotel employee who was working during the time of the murder, was indicted and convicted on two counts of capital murder involving the death of Nathan, along with the accompanying death-penalty specifications that the offense was committed during the course of an aggravated burglary and aggravated robbery. Jones was also convicted of aggravated robbery and aggravated burglary, and the prior-conviction specifications accompanying each charge. The trial court sentenced Jones to death for the aggravated-murder convictions, and imposed concurrent sentences of fifteen to twenty-five years' incarceration for the aggravated robbery and aggravated burglary convictions. Jones appealed his convictions to this court, and we affirmed in State v. Jones.[1] On April 3, 1999, Jones then filed in the trial court a petition for postconviction relief, which was denied. Jones also appealed our affirmance of his convictions to the Ohio Supreme Court on August 18, 1999. The Ohio Supreme Court affirmed Jones's convictions and sentences, including the death sentence on December 27, 2000.[2] In the instant appeal, Jones seeks review of the trial court's dismissal of his petition for postconviction relief.
Jones raises three assignments of error in his appeal. In his first assignment, Jones argues that the trial court erred in dismissing his petition when he provided sufficient operative facts to merit an evidentiary hearing and discovery on thirty-five claims for relief. In his second assignment, Jones argues that the postconviction statutes fail to provide an adequate corrective process. In his last assignment, Jones argues that the trial court erred when it adopted the state's findings of fact and conclusions of law.
 I. Postconviction Claims
In his first assignment, Jones challenges the trial court's denial of his thirty-five claims for postconviction relief without first conducting an evidentiary hearing. The trial court dismissed the majority of the claims on the basis of res judicata.
 A. Jones's Burden
To prevail on the claims presented in his petition, Jones must demonstrate "a denial or infringement of his rights in the proceedings resulting in his conviction[s] that rendered the conviction[s] void or voidable under the Ohio Constitution or the United States Constitution."[3] Thus, the violations of which Jones complains must be of constitutional dimension and must have occurred at the time he was tried and convicted.[4] Before Jones is entitled to an evidentiary hearing on his postconviction claims, he must show that there are substantive grounds for relief that would warrant a hearing based on the petition, the supporting evidence, and the files and records in the case.[5]
 Evidence Outside the Record Necessary to Defeat Res Judicata
A postconviction claim may be barred by res judicata "if the claim was raised or could have been raised at trial or on direct appeal."[6] To overcome the res judicata bar, a petitioner must provide cogent evidence outside the record.[7] This means that the evidence supporting a claim must be competent, relevant and material, must be more than marginally significant, and must "advance the claim `beyond mere hypothesis and a desire for further discovery.'"[8] To be cogent, the evidence outside the record "must not be cumulative or alternative to evidence presented at trial."[9] It "must be more than evidence which was in existence and available to the defendant at the time of trial and which could and should have been submitted at trial if the defendant wished to make use of it."[10]
While a petitioner may present different types of evidence outside the record, if the submitted evidence consists of affidavits,
 the trial court should consider all the relevant factors when assessing the credibility of the affidavits. These factors include whether the judge reviewing the postconviction petition is the same judge who presided over the trial, whether the affidavits submitted contain identical language or appear to have been drafted by the same person, whether the affidavits contain or rely on hearsay, whether the affiants are relatives of the petitioner or interested in the petitioner's success, and whether the affidavits contradict evidence proffered by the defense or are inconsistent with or contradicted by the affiant's trial testimony.[11]
The majority of Jones's claims that his convictions are void or voidable rest on allegations of ineffective assistance of counsel. While a petitioner may not obtain an evidentiary hearing merely because he raises a claim of ineffective assistance of counsel, the introduction of evidence outside the record is generally sufficient to avoid a dismissal on the basis of res judicata. But, as we have explained, the doctrine ofres judicata "may bar the claim where the petitioner was represented by new counsel on direct appeal, where th[at] counsel failed to raise the issue of trial counsel's incompetence, and where the issue could fairly have been determined without evidence dehors the record."[12]
For organizational purposes, we review Jones's challenges to the effectiveness of his counsel after we review his remaining claims for relief.
 C. First Claim-Arbitrary Imposition of Death Penalty
In his first claim for relief, Jones argues that his sentence is void or voidable because Hamilton County overprosecutes capital cases. According to Jones, this results in the arbitrary imposition of the death penalty. In the court below, Jones provided statistical evidence showing that Hamilton County prosecutors have outpaced the rest of Ohio's counties in seeking death-penalty indictments and obtaining death-penalty convictions. The trial court concluded that Jones's claim did not raise an issue of a denial of a constitutional right. That conclusion was wrong. Jones's argument does raise an issue of the denial of a constitutional right. He challenges the constitutionality of the Ohio death-penalty scheme because it allows Hamilton County prosecutors discretion in its administration. This claim challenges the constitutionality of the death-penalty scheme both facially and as applied to Jones. Jones's claim, however, fails. The claim challenging the statute as applied to Jones is barred by the doctrine of resjudicata. The evidence outside the record was available at trial and, to the extent that it is applicable specifically to Jones's case, it is marginal at best. Further, the Ohio Supreme Court has rejected the alleged facial constitutional infirmity in State v. Jenkins.[13]
 D. Second, Third, and Fourth Claims-Biased Juries
In his second and third claims, Jones argues that the process by which Hamilton County selects grand jurors and the forepersons of grand juries in capital cases is biased geographically, racially, culturally, and socio-economically. In his fourth claim, he contends that the prospective jury panel for his capital case was not a representative cross-section of the community because only six of the sixty prospective jurors were African-American.
To support his claims below, Jones presented an affidavit of a criminal investigator who provided a list that she had compiled in 1994 of twenty-one Hamilton County grand-jury forepersons who had returned capital indictments. Of that total, nineteen were "white," and the race of the remaining two was not identified. Jones also supplied the list of grand jurors and their addresses from 1985 through 1990, the deposition testimony of a Hamilton County common pleas judge, who stated that the administrative judge had the responsibility of selecting forepersons in Hamilton County, two photographs and various documents concerning Jones, including minor-misdemeanor citations and correspondence concerning employment (all which Jones had in a briefcase located in the trunk of his car), and completed jury questionnaires provided by potential jurors in his case. This claim is barred by res judicata, as it could have been raised at trial or on direct appeal.[14] The evidence outside the record either is irrelevant to Jones's claim, was available at the time of Jones's trial, or fails to present sufficient operative facts to demonstrate that Hamilton County systematically excludes distinctive groups in the community from serving as grand jurors.
 E. Fifth Claim-Peremptory Challenge
In his fifth claim, Jones argues that the state used its peremptory challenges at the trial in a racially discriminatory manner. To support his claim below, Jones proffered the jury questionnaires and various jurors' comments during voir dire. Jones's claim is res judicata. The evidence that he presented was available at trial and could have been submitted on appeal.
 F. Eighth, Thirtieth, and Thirty-Fifth Claims-Withholding Exculpatory Evidence
In his eighth claim for relief, Jones argues that his convictions should be vacated because the prosecutor concealed exculpatory evidence. In a similar vein, in his thirtieth and thirty-fifth claims, he argues that his trial counsel were rendered ineffective because the prosecutor withheld exculpatory evidence. (We believe the fundament of these last two claims concerns whether the prosecutor withheld exculpatory evidence and review the claims as such.)
In the eighth and thirteenth claims, Jones argues that the prosecutor withheld Blue Ash Police Department property tags that contained evidence of irregularities that were favorable to him. For example, there were gaps in the sequentially numbered tags where multiple items were collected on a given date; the tag relating to a purse appeared to be wrongly dated; some of the dates on the tags appeared to have been altered; one of the tags stated "Photo evidence-negative results from FBI shoe print exam"; there were no tags for Jones's car keys; a property tag referred to a bloody handkerchief taken from Jones, but there was no evidence of forensic tests having been done on the handkerchief; and although the tag for the handkerchief was dated September 12, 1994, the tag number corresponded sequentially to items taken from Jones's car on September 14, and not to items taken from him on September 12.
In his thirty-fifth claim, Jones's contends that the prosecutor failed to disclose copies of the Blue Ash Police Department's yearly reports of criminal activity from the department's hotel/motel interdiction unit. According to Jones, the evidence could have further advanced Jones's claim of innocence by demonstrating the following: (1) that the Embassy Suites Hotel routinely hired criminals; (2) that the hotel's guests were routinely crime victims; (3) that the hotel rooms were routinely used by "unsavory characters," and (4) that several thefts had occurred at the hotel after Jones was no longer present, including an incident in which someone tried to enter a guest's room with a key.
In support of the first two claims, Jones provided to the court below copies of the property tags, an affidavit of S. Adele Shank, an attorney experienced in representing capital defendants, and the affidavit of Catherine Adams, one of Jones's trial counsel. Adams's affidavit stated that neither trial counsel had reviewed the property tags. In support of his thirty-fifth claim, Jones presented the 1994 yearly report. The trial court ignored Jones's claim that the state had withheld exculpatory material in violation of Brady v. Maryland,[15] and erroneously concluded that Jones's eighth and thirtieth claims concerned chain-of-custody issues that were barred by res judicata. It found that his thirty-fifth claim merely second-guessed trial counsel's strategy.
The suppression by the state of evidence favorable to a defendant is a violation of the defendant's due-process rights if the evidence is material to guilt.[16] The withheld evidence may be exculpatory or impeaching, but it must be "material" to be the subject of a Brady
violation.[17] To be material to guilt, the withheld evidence must be such that there is a reasonable probability that had it been disclosed, the result of the proceeding would have been different.[18] To determine the materiality of evidence, "[t]he question is not whether a defendant would more likely than not have received a different verdict with the evidence, but whether in its absence, he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."[19]
Thus, a "reasonable probability" of a different result exists where the state's suppression of evidence "undermines confidence in the outcome of the trial."[20] As this court has explained, "This standard of materiality applies regardless of whether the evidence is specifically, generally, or not at all requested by the defense."[21]
To prevail on the alleged Brady violation, Jones had to demonstrate that the prosecutor withheld material evidence favorable to him. While the property tags were of marginal impeachment value, we cannot conclude that the withholding of them undermined the confidence in Jones's trial. We also conclude that the 1994 hotel/motel interdiction unit's report was neither exculpatory nor material. Thus, the evidence Jones proffered either was not cogent or failed to demonstrate substantive grounds for relief.
 G. Twelfth Claim-Refusal to Admit Evidence
In his twelfth claim, Jones argues that his convictions should be vacated because the trial court improperly refused to admit the testimony of a public defender. The public defender's testimony concerned Jones's involvement in the postconviction proceedings of another prisoner, and was proffered to demonstrate the vindictiveness of the Hamilton County Prosecutor toward Jones. According to Jones, the evidence demonstrated the state's interest in ensuring that his credibility was destroyed and prevented him from presenting a defense. To support his claim below, Jones provided the affidavit of the public defender, who summarized the testimony that he would have provided, and the state's motion to dismiss the other prisoner's postconviction petition. Our review of the record demonstrates that Jones's counsel proffered into the record at his trial the testimony of the public defender, along with other evidence. Jones could have raised his claim on direct appeal without resorting to evidence outside the record. Thus, his claim is barred by resjudicata.
 H. Twenty-Second Claim-Bible in Jury Room
In his twenty-second claim, Jones argues that his convictions are void or voidable because a juror brought a Bible into the sentencing deliberations to explain why the imposition of a death sentence was consistent with the religious beliefs of two jurors who did not want to impose the death penalty. In support of this claim below, Jones provided the affidavit of a criminal investigator, who stated that, during an interview with a juror, the juror told him that another juror had brought into the jury room either a Bible or written scriptures to explain to him and another juror why the death sentence was consistent with Christian beliefs.
Evid.R. 606(B) forbids a juror from testifying as to "any matter or statement occurring during the course of the jury deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental; processes in connection therewith." A juror may testify, however, on "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented."[22] "In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves * * * and the information must be from a source which possesses firsthand knowledge of the of the improper conduct."[23]
Obviously, Evid.R. 606(B) would have prohibited consideration of an affidavit from the juror himself. Jones attempted to circumvent the rule by supplying the affidavit of the criminal investigator. Under Evid.R. 606(B), the affidavit was inadmissible as well. The criminal investigator's affidavit contained the juror's statements to him about improper conduct during deliberations. This evidence was incompetent. The investigator had no firsthand knowledge of the alleged juror misconduct, and his statements relied solely on the statements of the juror. Jones failed to provide evidence to demonstrate he was entitled to relief on this claim.
 I. Twenty-Third Claim-Actual Innocence
In his twenty-third claim, Jones contends that he is legally innocent. In support of his claim below, he provided his own affidavit in which he stated that he did not kill Nathan, and that his attorneys had told him before trial that the state had offered him a plea bargain, which he refused because he was innocent. He also supplied newspaper articles indicating that Hamilton County sent more people to death row than any other Ohio county and several states.
To the extent that Jones raises a claim of actual legal innocence, the claim fails to constitute a substantive ground for postconviction relief.[24] To the extent, that he is raising issues concerning the manifest weight and sufficiency of the evidence, his claims are barred byres judicata in light of the fact that the evidence outside the record fails to materially advance his claim of innocence.
 J. Twenty-Fourth Claim-Postconviction Process Inadequate
In his twenty-fourth claim, Jones argues that the postconviction statutes provide an inadequate corrective process, because a petition for relief must be filed without the benefit of discovery and because claims may be barred by the doctrine of res judicata. In the court below, Jones provided the affidavit of an assistant public defender, who provided statistical information regarding (1) the scarcity of cases in Ohio in which a petitioner had been granted postconviction relief, (2) the scarcity of cases in which an Ohio court had granted an evidentiary hearing or allowed discovery, and (3) the infrequency with which Ohio appellate courts had reversed or vacated trial courts' decisions.
We have determined that neither the failure to grant discovery in the initial stages of postconviction proceedings nor the application of resjudicata to bar a claim makes constitutionally infirm.[25] Thus, Jones is not entitled to relief on this claim.
 K. Twenty-Fifth Claim-Constitutionality of Page Limit
Jones argues in his twenty-fifth claim that the Crim.R. 35 limitation of three pages for each ground for postconviction relief is unconstitutional. To support this claim below, he provided the same affidavit that he used to support his twenty-fourth claim. The trial court correctly dismissed this claim, noting that the Ohio Supreme Court had previously held that page limitations in capital cases are proper.[26] Further, because the alleged unconstitutionality of the page limitation is not related to anything that occurred at trial, we believe it is not cognizable in a postconviction proceeding.[27]
 L. Twenty-Sixth Claim-Disproportionate Application of Death Penalty
In Jones's twenty-sixth claim, he argues that his convictions are void or voidable because the death penalty is disproportionately meted out to racial minorities or to defendants who are accused of killing white victims. To support this claim below, Jones provided Ohio death-penalty proportionality statistics, which included a victim's race and a defendant's race, and a 1990 table that provided the number of persons by race and gender in each Ohio county. Jones also raised this argument on direct appeal.
Further, Jones's evidence outside the record failed to support his claim. "Statistics indicative of a disparate impact alone are insufficient to establish a claim of discriminatory enforcement of the death penalty; rather, the minority defendant must show that the decision makers in his case acted with discriminatory purpose."[28] Jones failed to present evidence of intentional racial discrimination in his trial. Thus, Jones's claim is res judicata.
 M. Twenty-Seventh and Twenty-Eighth Claims-Cruel and Unusual Punishment
In his twenty-seventh and twenty-eight claims, Jones contends that death by electrocution or by lethal injection constitutes cruel and unusual punishment. In support of his claim below, he attached various law review articles, reports, a transcript, and photographs that detailed the execution procedures, mutilations to the bodies of condemned persons, and mistakes made by those administering the death penalty. The Ohio Supreme Court has already determined that death by electrocution is not cruel and unusual punishment.[29] While the court has not yet ruled on the constitutionality of lethal injection, R.C. 2949.22 allows a condemned person to elect the means by which the state will put him to death. Jones need not choose lethal injection. Thus, whether lethal injection is cruel and unusual punishment need not be decided because we are "bound by Ohio law to find that one of the means of death which [sic] can be elected by a defendant is constitutional."[30] Jones's claim has no merit.
 II. Ineffective-Assistance Claims
Jones's sixth, seventh, ninth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, thirty-first, thirty-second, thirty-third, and thirty-fourth claims all raise allegations of ineffective assistance of trial counsel. (We have addressed Jones's thirtieth and thirty-fifth claims in Section I(F) above.) To prevail on these claims below, Jones had to demonstrate (1) that his trial counsel substantially violated his or her essential duties to Jones and (2) that as a result Jones was denied some substantive or procedural right that made his trial unreliable or the proceeding fundamentally unfair.[31] To warrant an evidentiary hearing, Jones had to provide evidence that, if believed, established both elements.[32]
Jones had to provide more than broad assertions of prejudice and conclusory allegations of ineffective assistance of counsel.[33]
Furthermore, he had to overcome the strong presumption that a licensed attorney is competent and that a challenged act or failure to act was a sound trial strategy under the circumstances.[34] While the presentation of evidence outside the record may avoid dismissal of an ineffective-assistance claim on the basis of res judicata, the claim may be barred by the doctrine where the petitioner was represented by new counsel on direct appeal, that counsel failed to raise the issue of trial counsel's incompetence, and the issue could have been determined without the evidence dehors the record.[35]
 A. Sixth Claim-Dr. McDonough's Testimony
In his sixth claim, Jones contends that his trial counsel was ineffective for failing to object to the testimony of Jones's physician, Dr. McDonough, who testified on behalf of the state. This claim is overruled on the authority of State v. Jones.[36]
 B. Seventh and Thirty-Third Claim-Failure to Investigate and Properly Prepare Cross-Examination
In his seventh claim for relief, Jones argues that he was denied effective assistance because his trial counsel failed to properly prepare for cross-examination of Dr. McDonough, in part by failing to effectively utilize Dr. Solomkin. In his thirty-third claim, Jones contends that trial counsel was ineffective for failing to make a reasonable investigation as a basis for making strategic decisions about medical information admitted at trial once they learned that Dr. McDonough was being called as a state's witness. The trial court concluded that both claims were barred by res judicata.
In support of his claims below, Jones filed the affidavit of Dr. Solomkin. The affidavit contained allegations of serious mistakes and flaws in Dr. McDonough's testimony about eikenella corrodens, its frequency, its many potential sources, and Dr. McDonough's characterization of Jones's wound as one caused by his hand violently striking another's mouth. It also related the extent to which Jones's attorney was unfamiliar with basic medical science when he questioned Dr. Solomkin.
Jones also supplied the affidavit of Shank, who stated that counsel had failed to adequately challenge the state's theory of the case, failed to prepare for the admissibility of Jones's medical records, and failed to object to McDonough's testimony and the admission of Jones's medical records; and the affidavit of Adams, who stated that she did not speak to Dr. Solomkin prior to the day of his deposition, that the other attorney had obtained him, and that the other attorney had told her that he had provided Dr. Solomkin with Jones's medical reports before the morning of the deposition. Adams's affidavit further stated that she was not aware of the other attorney's failure to prepare Dr. Solomkin until she read his affidavit.
Jones also supplied the affidavit of an Ohio assistant public defender with the materials from one of Jones's trial counsel's file attached. He also provided his own affidavit in which he objected to the use of Dr. McDonough's testimony.
The evidence presented either was available at the time of trial, was cumulative to what was presented at trial, failed to meet the minimum level of cogency, failed to advance his claims, or failed to show that Jones could not have raised this claim on direct appeal. Thus, Jones's claims are barred by res judicata.
 C. Ninth and Thirty-First Claims-Failure to Review Property Tags
In Jones's ninth and thirty-first claims for relief, he asserts that trial counsel was ineffective for failing to inspect the Blue Ash Police Department's property tags. He supplied to the trial court below, as evidence outside the record, copies of the tags, the affidavit of Shank, who stated that the tags could have demonstrated that the seizure of Jones's keys in the trunk of his car exceeded the scope of a search warrant and was done in bad faith, and the affidavit of Adams, who stated that neither trial counsel had reviewed the property tags. The trial court found that these claims were barred by res judicata. We conclude that the evidence failed to support a substantive claim of ineffective assistance.
 D. Tenth Claim-Failure to Object to Briefcase and Contents
In his tenth claim for relief, Jones contends that his trial counsel were ineffective for failing to object to the admission of Jones's briefcase and its contents. In support of this claim below, Jones proffered the contents of the briefcase and his own affidavit, which stated that there was no reason to inform the jury of his criminal record. He also presented the affidavit of a criminal investigator, who stated that a juror had told him that the jury had reviewed the contents of the briefcase during its sentencing deliberations, that the briefcase contained information about Jones's criminal record, and that, after viewing the contents, three of the five jurors who had not wanted to impose the death penalty changed their votes because they believed that if Jones had committed other crimes, he had also committed the murder at the Embassy Suites Hotel. Last, he presented Adams's affidavit, in which she stated that neither trial counsel had objected to the admission of the briefcase, that they had reviewed the contents of the briefcase one to two months before trial, but that they had not reviewed its contents during the trial or before its admission.
The trial court determined that the claim was barred by res judicata.
We agree. The evidence of the contents of the brief case was not evidence outside the record. The affidavit of the criminal investigator is not competent evidence. As we have already explained in our discussion of Jones's twenty-second claim, the investigator's affidavit was insufficient to circumvent the aliunde rule. The fact that trial counsel failed to object to the admission of the briefcase was in the original trial record. The fact that counsel failed again to review the contents of the briefcase during the trial, while evidence outside the record, failed to demonstrate ineffective assistance.
 E. Eleventh Claim-Failure to Investigate Master Keys
In his eleventh claim, Jones alleges that his trial counsel were ineffective because they failed to investigate the fact that other employees of the Embassy Suites Hotel had master keys to the rooms. To support this claim below, Jones proffered the affidavit of an employee of the hotel who had worked with Jones. According to the affidavit, the employee had a set of master keys provided to him by the general manager, and he continued to sign out a key each morning to avoid questions from other employees. He also stated that the key to open the Maple Room (a room where Jones was working on the day of the murder), which used to be a hotel room, was a master key, and that all persons working in maintenance knew this. Jones also provided the affidavit of another employee who had worked with him. She stated that the manager of the banquets department had given all members of her department a master key and that she still had hers.
The trial court concluded that this claim was barred by res judicata.
The transcript of the trial provided evidence that Jones was not the only employee with access to a master key, and that there were plentiful opportunities for other employees to obtain such keys. Thus, the evidence outside the record was cumulative and marginal, and failed to provide a substantive ground for relief.[37]
 E. Thirteenth Claim-Failure to Move for Appointment of Psychologist
In his thirteenth claim for relief, Jones contends that his trial counsel were ineffective because they failed to move for the appointment of an independent psychologist or profiler to assist in the preparation of his defense. The trial court concluded that this claim was barred byres judicata.
In support of his claim below, Jones proffered the affidavit of a psychologist, who concluded to a reasonable degree of psychological certainty that Jones was incapable of committing the beating of Nathan, and that he would have retreated from emotionally arousing situations. Jones also presented Shank's affidavit. Her affidavit stated that psychological evaluations were critical to the preparation of capital cases, and that such an evaluation would have demonstrated that Jones could not have committed the murder. While we conclude that Shank's evidence was not cogent, the affidavit of the psychologist precluded the conclusion the claim was barred by res judicata.
But the psychologist's affidavit did not demonstrate that trial counsel's failure to seek the appointment of a psychologist or profiler fell below an objective standard of reasonableness under all the circumstances.
 F. Fourteenth Claim-Prior Criminal Record
In his fourteenth claim, Jones argues that trial counsel were ineffective for informing the jury of his prior criminal record and for failing to object when the prosecutor did the same. In the trial court below, Jones provided his own affidavit in which he stated that he had no idea why counsel provided the jury with the information. He also provided Shank's affidavit, which stated that the failure of trial counsel to object fell below an objectively reasonable standard of performance.
The trial court concluded the claim was barred by res judicata.
We agree. The claim could have been fairly determined on direct appeal without resort to the affidavits.
 G. Fifteenth Claim-Jury Instructions
In his fifteenth claim, Jones argues that he was denied effective assistance because trial counsel failed to object to certain jury instructions and failed to request certain instructions. In support of this claim below, he provided Shank's affidavit. The trial court determined that this claim was barred by res judicata. Because the claim could have been fairly determined on direct appeal without resort to the affidavit, we agree.
 H. Sixteenth Claim-Stipulation
Jones asserts in his sixteenth claim that trial counsel were ineffective because they stipulated to the fact that the brown shoes found in his friend's home belonged to him. To substantiate this claim, he provided to the court below his own affidavit, in which he stated that the shoes were not his, and that he had so informed counsel at trial. Shank's affidavit concluded that Jones's counsel were ineffective in this regard.
The stipulation in question did not state that the shoes belonged to Jones. It stated instead that they were taken from him as a result of the execution of a search warrant and that testing revealed no blood or blood products. The testimony at trial was that some bruises on the victim's body corresponded to the heel of the shoes, but not to the extent that the similarity excluded all other shoes. The testimony of Jones's "common-law" wife was that the shoes did not belong to Jones, and that he did not own brown shoes. Jones failed to provide evidence supporting substantive grounds for relief.
 I. Seventeenth Claim-Appointment of Independent Expert
In his seventeenth claim for relief, Jones argues that his trial counsel were ineffective for failing to move for the appointment of an independent expert to analyze the fiber found in his wound. He contends that such an expert might have provided an alternative explanation ofeikenella corrodens. In the court below, Jones proffered Shank's affidavit, which stated that such an expert was necessary. The court concluded that this claim was res judicata. We disagree. But Jones has still failed to demonstrate ineffective assistance of counsel. The evidence outside the record does not meaningfully demonstrate that the choice not to move for the appointment of an expert constituted ineffective assistance. The evidence is speculative at best.
 J. Eighteenth Claim-Failure to Provide Mitigation Evidence
In his eighteenth claim for relief, Jones argues that he was denied effective assistance because counsel failed to effectively investigate, identify, and present to Jones available mitigation evidence. To support the claim below, Jones provided the affidavit of Shank. She stated that Jones could not have been competently advised about making his decision to present mitigation only on the issue of residual doubt, because his counsel had failed to adequately investigate other potential mitigation theories.
We conclude that Jones's claim fails due to the lack of demonstration of substantive grounds for relief. The record also demonstrates that Jones did not want to involve his family in the sentencing phase of his trial. The affidavit proffered by Jones did not contain sufficient information to support a substantive claim of ineffective assistance.[38]
 K. Nineteenth Claim-Expressions of Contempt
In his nineteenth claim for relief, Jones asserts that he was denied effective assistance because one of his trial counsel's repeated expressions of contempt for him made both to him and to his family. In light of the comments, Jones claims that his attorneys failed to serve as active, effective advocates for him. To support this claim below, he provided his own affidavit and the affidavits of his sister and common-law wife. He also proffered the affidavit of one of his counsel, but that affidavit failed to provide any evidence of derogatory comments made by counsel to or about Jones. While we find the comments mentioned in the affidavits to be reprehensible, we conclude that the evidence did not provide substantive grounds for relief.
 L. Twentieth Claim-Multiple Omissions
In his twentieth claim for relief, Jones presents fourteen examples of how his trial counsel were allegedly ineffective. Twelve of those examples involve the counsel's failure to object to various conduct by the prosecutor, the replacement of a juror, and the admission of evidence. Other examples involve the failure to object to the makeup of the prospective jury panel, the discriminatory use of a Batson
challenge, the selection process for grand juries in Hamilton County, and the selection of the grand-jury foreperson both in his case and in other cases in Hamilton County. Jones also claims that trial counsel failed to effectively use Crim.R. 16(B)(1)(g) to review any statements by the state's witnesses and failed to adequately investigate theories for his defense. In support of this claim, Jones proffered below the jury questionnaires. He also presented the affidavit of a criminal investigator in which the investigator stated that a juror had told him it had been difficult for him to move from the position of an alternate juror to a position on the sentencing jury. Jones also provided Shank's affidavit, in which she criticized the failure (1) to make objections to the introduction of certain evidence, (2) to make a Batson challenge, and (3) to adequately prepare and investigate for trial. The trial court concluded that the claim was res judicata. In our view, the majority of the examples raised in this claim are subject to the bar of resjudicata. The remaining examples, to the extent that the evidence outside the record may be cogent, fail to demonstrate ineffective assistance of counsel.
 M. Twenty-First Claim-Failing to Review Warrants
In his twenty-first claim, Jones argues that counsel were ineffective for failing to file a motion to suppress evidence based on the search warrants issued for Jones's home, car, and place of employment, and the hospital where Jones received treatment. In support of this claim, he provided to the court below Shank's affidavit, which stated that had Jones's counsel reviewed the warrants they would have discovered that they were based on evidence (Jones's medical records and information from Dr. McDonough) obtained in violation of the physician-patient privilege; that probable cause did not exist to search Jones's car or home; that the warrants were not drafted with the requisite particularity; that the search of Jones's car exceeded the scope of the warrant; and that no warrant authorized the seizure of Jones's car. The trial court determined that the twenty-first claim was barred by res judicata. We overrule this claim on the authority of State v. Jones,[39] and Jones's failure to demonstrate that counsel provided ineffective assistance.
 O. Thirty-Second Claim-Improper Investigation
In his thirty-second claim, Jones asserts that he was denied effective assistance because his trial counsel failed to properly investigate. Specifically, Jones challenges the failure to determine that the dress code of the Embassy Suites Hotel required its employees to wear black shoes, and that failure to do so would have resulted in his being sent home. The state introduced a pair of brown shoes consistent with the bruising on Nathan's body.
In support of his claim below, Jones offered his own affidavit, which stated that he had informed counsel that the brown shoes were not his, and that brown shoes were not part of the hotel's dress code. Consequently, Jones contended that people would have noticed that he was wearing brown shoes. The trial court determined that the evidence was not cogent.
In State v. Calhoun,[40] the Ohio Supreme Court has determined that a trial court in a postconviction proceeding has the discretion to judge an affidavit's credibility in determining whether to accept its truthfulness. In assessing credibility, the trial court should consider relevant factors.[41] Further, "[a] trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur."[42]
In this case, the trial court's findings of fact stated that there was no evidence that Jones was abiding by the dress code on the date of the murder. Its conclusion of law was that Jones had failed to provide "sufficient evidentiary documents to pass the minimum level of cogency required for postconviction relief." In light of the Ohio Supreme Court's decision in Calhoun, the trial court's findings of fact and conclusions of law are wrong.
Furthermore, applying the Calhoun factors, we note that the postconviction judge was not the same judge who had originally presided at Jones's trial, and that Jones's affidavit did not contain hearsay. Further, the affidavit was not contradicted by defense evidence at trial.
The record indicates that Jones's "common law" wife testified that he wore a gray shirt, black pants, and black shoes to work every day, and that the brown shoes were not Jones's. Thus, the facts provided in Jones's evidence outside the record were merely cumulative to the evidence presented at trial. Jones failed to provide substantive grounds for relief.
 P. Thirty-Fourth Claim-Failure to Prepare
In his thirty-fourth claim, Jones argues that trial counsel failed to adequately prepare for Dr. McDonough's testimony and failed to obtain and use documents generated by the Bureau of Workers' Compensation. According to Jones, his trial counsel could have used the documents to demonstrate that the bureau had viewed his evidence as credible, because it honored Jones's claim of a work-related injury to his hand. Also, the documents could have been used to confront McDonough on why he had not alerted the Bureau of Workers' Compensation that Jones was committing a fraud. To substantiate this claim, Jones provided the same evidence used to support his thirty-third claim, except that the documents attached to the assistant public defender's affidavit were the workers' compensation documents.
The decision not to use the documents did not rise to the level of ineffective assistance. Jones's claim, at best, provided the existence of an alternative tactical theory. The fact that a different trial tactic "might have improved the defense does not show ineffective assistance of counsel."[43] As we have concluded in our analysis of Jones's thirty-third claim, the evidence outside the record failed to defeat the application of res judicata. As to the documents from the Bureau of Workers' Compensation, such evidence failed to demonstrate ineffective assistance of counsel.
 III. Twenty-Ninth Claim-Cumulative Effect
In his twenty-ninth claim, Jones contends that the cumulative effect of the errors identified in his first through twenty-eight claims denied him a fair trial, relying on the evidence presented for each of those claims. We conclude that Jones has failed to present sufficient operative facts to demonstrate that the effect of the claimed errors denied him a fair trial.
 IV. Second Assignment of Error
In his second assignment, Jones complains that the postconviction process is an exercise in futility for an indigent litigant like himself, because the litigant is not afforded access to traditional discovery mechanisms. Without such access, Jones claims, he is precluded from collecting evidence to support his claims. We agree with the conclusion of the Fourth District Court of Appeals in State v. La Mar[44] that the failure to afford a petitioner discovery to determine whether he is entitled to an evidentiary hearing is not unconstitutional. "The cases are in agreement that the lack of discovery during the initial stages of the postconviction process is based upon sound logic and does not violate any constitutional right of the petitioner."[45] This court has also determined that it is not unconstitutional to deny a petitioner discovery in the initial stages of a postconviction proceeding.[46] We overrule Jones's second assignment.
 V. Third Assignment of Error
In his third assignment, Jones contends that the mere fact that the trial court adopted the findings of fact and conclusions of law submitted by the state violated his due-process rights and was also in violation of Loc.R. 17 of the Hamilton County Court of Common Pleas. First, Loc.R. 17 has no application to postconviction proceedings.[47] Further, "a trial court's adoption of the findings of fact and conclusions of law submitted by the state does not, by itself, deprive the petitioner of a meaningful review of the petition for postconviction relief and does not constitute error in the absence of demonstrated prejudice."[48] In State v.Campbell,[49] we explained that prejudice results when the findings of fact and conclusions of law fail to adequately apprise the petitioner and this court "of the basis of the denial of each claim for relief advanced in his petition." We are unable to conclude that the adoption of the state's findings of fact and conclusions of law prejudiced Jones in this manner. (But we note that because the state's findings of fact and conclusions of law, as adopted by the trial court, were incorrect in various instances, the trial court might have been more effective and efficient if it had drafted its own.) We overrule Jones's third assignment.
 VII. Conclusion
We overrule Jones's assignments. Accordingly, we affirm the trial court's judgment.
Sundermann and Shannon, JJ., concur.
Raymond E. Shannon, J., retired, of the First Appellate District, sitting by assignment.
[1] State v. Jones (Aug. 28, 1998), Hamilton App. No. C-958578, unreported.
[2] State v. Jones (2000), 90 Ohio St.3d 403, ___ N.E.2d __.
[3] State v. Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported.
[4] Id.
[5] See State v. Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819.
[6] State v. Fears (Nov. 12, 1999), Hamilton App. No. C-990050, unreported, citing State v. Perry (1967), 10 Ohio St.2d 175,266 N.E.2d 104, paragraph nine of the syllabus.
[7] Id.
[8] Id., quoting State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported.
[9] Id., citing State v. Combs (1995), 100 Ohio App.3d 90, 98,652 N.E.2d 205, 212.
[10] State v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811, unreported.
[11] State v. Fears, supra, citing State v. Calhoun (1999),86 Ohio St.3d 279, 284-285, 714 N.E.2d 905, 911-912.
[12] State v. Fears, supra.
[13] State v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264.
[14] Accord State v. McNeill (2000), 137 Ohio App.3d 34, 42,738 N.E.2d 23, 29.
[15] See Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194.
[16] See Brady v. Maryland, supra; see, also, State v. Johnston
(1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph four of the syllabus.
[17] United States v. Bagley (1985), 473 U.S. 667,105 S.Ct. 3375.
[18] Id. at 682, 105 S.Ct. at 3383.
[19] Kyles v. Whitley (1995), 514 U.S. 419, 434, 115 S.Ct. 1555,1566.
[20] Id., quoting United States v. Bagley, supra, at 678,105 S.Ct. at 3381.
[21] State v. Franklin (Jan. 25, 1995), Hamilton App. No. C-930760, unreported, citing United States v. Bagley, supra.
[22] Evid.R. 606(B).
[23] State v. Schiebel (1990), 55 Ohio St.3d 71, 75-76, 564 N.E.2d 54,61.
[24] See State v. Watson (1998), 126 Ohio App.3d 316,710 N.E.2d 340.
[25] See State v. Fautenberry (Dec. 31, 1998), Hamilton App. No. C-971017, unreported. See, also, State v. Lewis (Dec. 3, 1998), Cuyahoga App. No. 73736, unreported.
[26] See State v. Bonnell (1991), 61 Ohio St.3d 179, 573 N.E.2d 1082;State v. Davis (1991), 62 Ohio St.3d 326, 581 N.E.2d 1362.
[27] See State v. White (June 16, 1999), Summit App. No. 19040, unreported.
[28] State v. Williams (June 22, 1998), Butler App. No. CA97-08-162, unreported.
[29] See State v. Coleman (1989), 45 Ohio St.3d 298, 308, 544 N.E.2d 622,633.
[30] See State v. Vrabel (Mar. 2, 2000), Mahoning App. No. 95 CA 221, unreported; State v. Joseph (July 17, 1997), Allen App. No. 1-96-90, unreported.
[31] See State v. Combs at 101, 652 N.E.2d at 211-212.
[32] See State v. Jackson (1980), 64 Ohio St.2d 107, 413 N.E.2d 819,820, syllabus.
[33] See State v. Jackson at 111, 413 N.E.2d at 822.
[34] See State v. Thompson (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407,417.
[35] See State v. Sowell (1991), 73 Ohio App.3d 672, 598 N.E.2d 136.
[36] State v. Jones (2000), 90 Ohio St.3d 403, ___ N.E.2d __.
[37] See State v. Powell (1993), 90 Ohio App.3d 260, 270, 629 N.E.2d 13,19.
[38] See State v. Jones (2000), 90 Ohio St.3d 403, ___ N.E.2d __.
[39] State v. Jones (2000), 90 Ohio St.3d 403, ___ N.E.2d __.
[40] State v. Calhoun (1999), 86 Ohio St.3d 279, 714 N.E.2d 905.
[41] Id. at 285, 911-912.
[42] Id.
[43] See State v. Combs supra, at 104, 652 N.E.2d at 214.
[44] State v. La Mar (Mar. 17, 2000), Lawrence App. No. 98 CA 23, unreported.
[45] Id.
[46] See State v. Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported.
[47] See State v. Garner (Dec. 19, 1997), Hamilton App. No. C-960995, unreported.
[48] Id.
[49] State v. Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported.