DECISION.
Petitioner Ralph Lynch appeals from the trial court's order dismissing his petition for postconviction relief brought pursuant to R.C. 2953.21. On February 21, 2001, the trial court ruled that an evidentiary hearing was not necessary to resolve the claims that Lynch had raised in his petition and, concurrent with its entry dismissing the petition, filed its findings of fact and conclusions of law. Lynch now asserts six assignments of error in which he contends that the trial court erred by dismissing his petition without granting his request for discovery; by denying him an evidentiary hearing on each of his claims for relief; and by applying the doctrine of res judicata. Finding no merit in these assignments, we affirm.
On June 24, 1998, Lynch lured six-year-old Mary Jennifer Love into his apartment in Colerain Township, Hamilton County, Ohio. Lynch began to molest the little girl. To stifle her screams, he strangled her with his hands for three minutes. Once she was dead, Lynch took Love to the bathtub, where he sexually abused her lifeless body. He then placed her body in a vacuum-cleaner box and removed it from his apartment. He dumped her body on a wooded lot off of Breezy Acres and covered it with an old rug. He disposed of her clothing at his employer's work site.
Love's parents alerted police that she was missing. A search of the neighborhood was unsuccessful. Federal Bureau of Investigation agents canvassed the neighborhood, looking for persons who had seen Love. The agents interviewed Lynch. His demeanor and responses aroused their interest in him. He said that he had recently met Love and had spoken to her, but had no knowledge of her whereabouts. The next day, Hamilton County sheriff's deputies questioned Lynch to obtain additional information. Lynch was cooperative and went to a police station for more questioning. At the station, another officer, not involved in the search for Love, noticed Lynch and informed the investigators that he had previously arrested Lynch for exposing himself to a child.
Lynch was informed of his Miranda rights and signed a written waiver. He was interrogated and admitted touching young girls in his apartment in the past. He conceded that he had touched Love outside his apartment. Lynch was permitted to leave the station when the interrogation concluded.
On July 3, 1998, at the request of police, Lynch returned to the station. After he executed another waiver-of-rights form, police questioned Lynch about inconsistencies in his previous statements. During five hours of questioning, he admitted harboring sexual fantasies about children and offered, "She's on Breezy Acres." He led police to Love's remains and admitted that he was responsible for killing Love. A recording of Lynch's confession was made and was played for the jury in his trial.
Lynch was indicted on three separate counts of aggravated murder and one count each of rape, kidnapping, and gross abuse of a corpse. Each aggravated-murder count was accompanied by four death-penalty specifications: that Lynch had purposely killed Love to escape detection or apprehension after committing the offense of rape; that after committing or attempting to commit the offense of rape, Lynch was the principal offender in the commission of the aggravated murder; that after committing or attempting to commit the offense of kidnapping, Lynch was the principal offender in the commission of the aggravated murder; and that Lynch was the principal offender and had purposely caused the death of Love, a child under thirteen years of age.
Represented by three experienced counsel, Lynch's primary contention in the guilt-or-innocence phase of the trial was that he had killed Love accidentally, not purposefully. The defense rested without calling any witnesses. After deliberating for four hours, the jury returned verdicts of guilty on all the charges and specifications. In the penalty phase of the trial, Lynch presented evidence that included testimony from three family members recounting the sexual abuse of Lynch when he was a child. The testimony of two psychologists further revealed that Lynch was a pedophile who suffered from a compulsion to have sex with children, and that he had low cognitive function. Nonetheless, the jury recommended the death penalty.
After merging the three aggravated-murder counts, the trial court sentenced Lynch to death; life imprisonment was imposed for the rape, and a ten-year term of imprisonment was imposed for the kidnapping.
Lynch filed an appeal to the Ohio Supreme Court, numbered 99-2248, on December 20, 1999. No resolution of that appeal appears of record.
 First Assignment of Error — Summary Judgment
In his first assignment of error, Lynch argues that that the trial court erred in failing to follow Civ.R. 56, and in dismissing his petition for postconviction relief, where the state had failed to support its motion or to rebut the affidavits and evidentiary documents he had offered.
This court has consistently refused to require the application of the summary-judgment procedures to the dismissal of a postconviction petition, because the specific statutory requirements of postconviction proceedings take precedence when in conflict with the civil rules. SeeState v. Fears (Nov. 12, 1999), Hamilton App. No. C-990050, unreported, at 5. As R.C. 2953.21 allows the trial court to dismiss a petition, with or without further submissions from either party, when, as here, the petition and the files and record of the case show that the petitioner is not entitled to relief, the trial court does not err in ignoring Civ.R. 56. The first assignment of error is overruled. See State v. Fears; see, also, State v. Moore (Sept. 18, 1998), Hamilton App. No. C-970353, unreported.
 Second and Third Assignments of Error — Res Judicata
In his second and third assignment of error, Lynch asserts that the trial court erred by dismissing certain of his claims for relief without an evidentiary hearing or discovery. This assertion requires that we address each of his claims in turn.
To prevail on his postconviction claims, Lynch had to demonstrate a denial or infringement of his rights in the proceedings concluding in his conviction that rendered the conviction void or voidable under the Ohio or the federal Constitution. See R.C. 2953.21(A)(1); see, also, State v.Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported.
Lynch's postconviction claims could have been dismissed without a hearing if he failed to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See R.C. 2953.21(C); see, also, State v. Combs
(1995), 100 Ohio App.3d 90, 98, 652 N.E.2d 205, 209, denial of habeas corpus reversed in Combs v. Coyle (C.A.6, 2000), 205 F.3d 269.
A claim could also have been dismissed upon the application of the doctrine of res judicata. Res judicata bars a postconviction claim that was raised or could have been raised at trial or on direct appeal. SeeState v. Perry (1967), 10 Ohio St.2d 175, 266 N.E.2d 104, paragraph nine of the syllabus. A petitioner cannot overcome the doctrine merely by providing evidence dehors the record. To defeat the application of resjudicata, the evidence dehors the record must meet some threshold level of cogency. As this court explained in State v. Fears at 6-7,
 It must be "competent, relevant and material" to the claim, be more than marginally significant, and advance the claim "beyond mere hypothesis and a desire for further discovery." * * * Thus, it must not be cumulative of or alternative to evidence presented at trial. * * * The evidence "must be more than evidence which was in existence and available to the defendant at the time of the trial and which could and should have been submitted at trial if the defendant wished to make use of it." [Citations omitted.]
 If the evidence dehors the record consists of affidavits, the trial court should consider all the relevant factors when assessing the credibility of the affidavits. See State v. Calhoun (1999), 86 Ohio St.3d 279, 714 N.E.2d 905.
 First Claim for Relief — Over-Prosecution of Capital Cases
In his first claim for relief, Lynch asserted that his conviction was void or voidable because Hamilton County prosecuted too many aggravated-murder indictments as capital cases, thus permitting the arbitrary application of the death penalty. He provided statistical evidence comparing death-penalty prosecutions in Hamilton County with those in Franklin and Montgomery Counties. While Lynch's argument did raise an issue of the denial of a constitutional right, the claim, which in part challenged a statute as applied, was barred by the doctrine ofres judicata, as the evidence dehors the record was available at trial. See State v. Jones (Dec. 29, 2000), Hamilton App. No. C-990813, unreported. And the Ohio Supreme Court has rejected the asserted facial unconstitutionality of the statute. See State v. Jenkins (1984),15 Ohio St.3d 164, 473 N.E.2d 264.
 Second, Third, Fourth, and Fifth Claims for Relief — Jury Selection
In four interrelated claims for relief, Lynch asserted that the venire, grand-jury, and petit-jury selection procedures in Hamilton County, as well as the process for selecting jury forepersons, were biased against certain racial, gender, and socio-economic groups. He also claimed that his trial counsel were ineffective for failing to raise these issues at trial.
The claims relating to venire, grand-jury, jury, and foreperson selection were barred by res judicata, as they could have been raised at trial or on direct appeal. The evidence dehors the record either was available at the time of trial or failed to demonstrate sufficient operative facts showing that Hamilton County systematically excluded members of the community from serving as jurors. See State v. Jones; see, also, State v. Campbell.
The fourth claim for relief, that his counsel were ineffective in failing to raise these issues at trial, also failed. The test for ineffectiveness is (1) whether counsel's performance fell below the objective standard of reasonableness, and (2) whether the deficient performance was prejudicial to the petitioner. See Strickland v.Washington (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 2068. To establish prejudice, the petitioner may not necessarily rely upon a showing that, in the absence of counsel's deficient performance, the outcome of the trial would have been different; he must show that he was denied some substantive or procedural right that made the trial unreliable or the proceeding fundamentally unfair. See Lockhart v. Fretwell (1993),506 U.S. 364, 113 S.Ct. 838.
As this court has rejected these same biased-jury claims in previous post-conviction decisions, trial counsel's performance did not fall below an objective standard of reasonableness. See State v. Jones; see, also,State v. Carter (Oct. 4, 1995), Hamilton App. Nos. C-940375 and C-940835, unreported. These claims were properly dismissed.
 Sixth Claim for Relief — Failure to Object to Jury Instructions
Lynch next asserted that his trial counsel were ineffective for failing to object to various instructions given to the jury during the guilt-or-innocence phase and during the penalty phase of his trial.
Where, as here, the claims of ineffective assistance could have been raised on direct appeal, without resort to attached affidavits, the claims are waived in accordance with the syllabus of State v. Cole
(1982), 2 Ohio St.3d 112, 443 N.E.2d 169. See, also, State v. Jones.
 Seventh Claim for Relief — Systemic Failure To Disclose Evidence
Lynch contended, in his seventh claim for relief, that the Hamilton County Prosecuting Attorney's office consistently failed to disclose evidence favorable to defendants. While Lynch did not cite to a specific instance of the state's failure to disclose exculpatory evidence in his case, he sought discovery to "demonstrate the existence of this ongoing problem and in [his] case."
The trial court did not err by dismissing this claim for relief without discovery or an evidentiary hearing, as Ohio's postconviction statutes do not contemplate discovery in the initial stages of the proceedings. See,e.g., State v. Campbell; see, also, State v. Zuern (Dec. 4, 1991), Hamilton App. Nos. C-890481 and C-910229, unreported.
 Eighth Claim for Relief — Voir Dire Ineffectiveness
In his eighth claim for relief, Lynch alleged that his trial counsel were ineffective for failing to challenge for cause three veniremen with a "predisposition to imposing the death penalty," and for failing to individually question the prospective jurors about child abuse, pedophilia, mental retardation, the impact of pretrial publicity, and the death penalty.
As these claims of ineffective assistance could and should have been raised on direct appeal, without resort to the attached affidavit, they were barred by res judicata. See State v. Cole, syllabus; see, also,State v. Bies (June 30, 1999), Hamilton App. No. C-980688, unreported.
 Ninth, Tenth, and Eleventh Claims for Relief — Suppression Hearing
In three interrelated claims for relief, Lynch asserted that his trial counsel were ineffective for failing to achieve the suppression of statements he had made to police and of evidence gained after he had consented to a search of his home and car. Lynch argued that his low mental functioning should have been emphasized by counsel in attacking the voluntariness of his interactions with police investigators.
All three claims were barred by res judicata, as they were or could have been raised on direct appeal without resort to the attached affidavit. See State v. Cole.
 Twelfth Claim for Relief — Mens Rea Expert
Lynch's twelfth claim for relief, erroneously denoted by the trial court as his eleventh, challenged his trial counsel for not presenting the testimony of a mental-health professional during the guilt-or-innocence phase of the trial to aid the jury in concluding that Lynch could not have formed the requisite mental state for aggravated murder and, therefore, that involuntary manslaughter was the more appropriate charge.
This claim for relief failed as, even without the assistance of a mental-health expert, the trial court gave an instruction to the jury on the lesser offense of involuntary manslaughter. Lynch's confession indicated that he had strangled Love for about three minutes, thus calling into question the efficacy of pursuing at length a defense before the jury that claimed the killing was accidental. Lynch did not present sufficient evidence to overcome the strong presumption that his trial counsel were competent and that their failure to act was a sound trial strategy under the circumstances. See Strickland v. Washington,466 U.S. at 689, 104 S.Ct. at 2065.
 Thirteenth, Fourteenth, Fifteenth, and Seventeenth Claims for Relief — Mental-Health Experts
Lynch next asserted that his trial counsel were ineffective for failing to adequately prepare one mitigation expert, Dr. Jill Bley, a clinical psychologist, and for permitting the deficient performance of Dr. Bley and the second mitigation expert, Dr. Robert Tureen, a neuropsychologist. As it was objectively reasonable for trial counsel to defer to the professional judgment of these two experienced mental-health experts in matters concerning Lynch's limited cognitive function and sexual predilections and urges, Lynch's counsel did not render him ineffective assistance. See State v. McGuire (1997), 80 Ohio St.3d 390, 399,686 N.E.2d 1112, 1120.
 Sixteenth and Twenty-Fourth Claims for Relief — Mitigation Interviews
In his sixteenth and twenty-fourth claims for relief, Lynch alleged that his trial counsel were ineffective for failing to interview adequately Lynch's friends, family, and prison mates for the penalty phase of the trial. The limited interviews, for example, purportedly did not provide an opportunity for family member to disclose details of the sexual abuse that Lynch had suffered as a child.
The mitigation evidence contained in the affidavits attached to Lynch's postconviction petition was merely cumulative of the substantial mitigation evidence presented in the penalty phase of the trial. The affidavit evidence was not sufficient to show that Lynch's counsel had deviated from an objectively reasonable standard of professionalism at trial. See State v. Combs, 100 Ohio App.3d at 103, 652 N.E.2d at 213.
 Eighteenth Claim for Relief — No Objection to Prosecutorial Misconduct
Lynch's eighteenth claim for relief was that his trial counsel were ineffective for failing to object to portions of the prosecutor's closing argument in the penalty phase of the trial. It was barred by the doctrine of res judicata, as it could have been raised on direct appeal. See Statev. Perry, paragraph nine of the syllabus.
 Twentieth, Twenty-First, and Twenty-Second Claims for Relief — Disproportionate Imposition of Death Penalty and Cruel and Unusual Punishment
In three interrelated claims for relief, Lynch argued that statistics and affidavits dehors the record established that the death penalty was disproportionately imposed on racial minorities and that death by electrocution or by lethal injection was cruel and unusual punishment. These claims have been addressed by and were properly on the authority ofState v. Jones and State v. Bies.
Therefore, the second and third assignments of error are overruled.
 Fourth Assignment of Error — Adequacy of Postconviction Statutes
In his fourth assignment of error, Lynch argues that Ohio's postconviction statutes do not comply with the requirements of due process under the federal Constitution, as they do not provide, inter alia, an effective method to investigate potential claims. This assignment of error is overruled on the authority of State v. Fautenberry (Dec. 31, 1998), Hamilton App. No. C-971017, unreported, in which this court rejected the argument that Ohio's postconviction process is constitutionally infirm.
 Fifth Assignment of Error — Adoption of the State's Proposed Entry
In his fifth assignment of error, Lynch contends that the trial court erred in adopting verbatim the state's proposed findings of fact and conclusions of law, which had been sua sponte offered to the court in conjunction with the state's motion to dismiss. Lynch claims that the trial court thereby violated Loc.R. 17(A) of the Hamilton County Court of Common Pleas, avoided its obligation under R.C. 2953.21(G) to "make and file" findings and conclusions, and deprived him of his constitutionally guaranteed right to a full and fair adjudication of each of his claims.
The trial court's adoption of the state's proposed findings of fact and conclusions of law "does not, by itself, deprive the petitioner of a meaningful review of [his] petition." State v. Garner (Dec. 19, 1997), Hamilton App. No. C-960995, unreported. As the findings and conclusions adopted by the trial court in this case were sufficient to inform Lynch and this court of the basis for the dismissal of his petition, the court complied with its statutory and constitutional duties. See State v.Jones; see, also, State ex rel. Carrion v. Harris (1988), 40 Ohio St.3d 19,20, 530 N.E.2d 1330, 1331. The fifth assignment of error is overruled.
 Sixth Assignment of Error — Cumulative Error
Lynch contends that the cumulative effect of the errors identified in his substantive claims denied him a fair trial and requires a reversal of the dismissal of his petition. But Lynch failed to present sufficient operative facts to demonstrate that the effect of the claimed errors, singly or in combination, deprived him of a fair trial. See State v.Jones. The sixth assignment of error is overruled.
 Conclusion
Having overruled all of Lynch's assignments of error, we affirm the judgment of the trial court
Judgment affirmed.
Gorman, P.J., Doan and Sundermann, JJ.